## F. KEISER v. MAHANOY CITY GAS CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 19, 1891—Decided October 5, 1891.
[To be reported.]

1. A depreciation in the selling or rental value of real estate, by reason of the establishment of a lawful but undesirable business in its vicinity, does not give a cause of action; nor does the fact that such business is a source of some personal discomfort and annoyance, so long as it is conducted in a lawful manner.
2. To maintain an action for nuisance against the proprietor of a lawful business, carried on in the neighborhood of plaintiff's premises, it must be shown that the plaintiff has suffered a substantial injury, because of an unlawful act or of an act of negligence, on the part of the defendant, in the conduct of the business.
3. In an action against a gas company for negligently suffering waste products to be carried by a stream to the plaintiff's hotel, the noisome odors causing sickness in the plaintiff's family and a loss of custom at the hotel, such facts as fairly exhibit the extent of his losses must be laid before the jury; a mere conjecture cannot be substituted therefor.

Statement of Facts.

4. The fact that the defendant continued the negligent practice complained of after the suit was brought, is, if shown, a proper subject for consideration in determining whether exemplary damages should be awarded or not; but the fact that such practice was continued during the pendency of a bill in equity to restrain it, has no bearing upon this question.

5. And it is error to instruct the jury to inquire whether or not a preliminary injunction granted upon such bill was violated by the defendant; it is not the violation of an order of a court of equity, but some act of wantonness directed toward the plaintiff, that must be found by the jury as a basis for exemplary damages.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 263 January Term 1891, Sup. Ct.; court below, No. 66 March Term 1884, C. P.

On January 17, 1884, Francis Keiser brought trespass on the case against the Mahanoy City Gas Company, to recover damages for a private nuisance averred to have been occasioned by negligence of the defendant in carrying on the manufacture of illuminating gas. The defendant pleaded not guilty.

At the trial on December 9, 1888, the following facts were shown:

In 1873, the plaintiff became the owner of a property situated on the north side of Centre street in the borough of Mahanoy City. His lot had a frontage on said street of seventy-five feet, and a depth of one hundred and twenty-five feet. A hotel building was erected on the eastern side of the lot, occupying about forty-two feet of the front on Centre street. The North Mahanoy creek ran through the lot on the western side of the hotel building. Throughout the whole length of the plaintiff's lot, a wall eight or ten feet high had been built on each side of the creek, and the western wall of the hotel building was in part set upon the eastern creek-wall. The creek was covered over with planking laid upon the walls referred to, so as to make the whole surface of the plaintiff's lot available for use. About 1880, the plaintiff built a water closet upon the planking over the creek, adjoining the west side of his hotel building, cut away the planks beneath the seat of the water-closet, so that excrement would fall down to the creek, and placed a communicating door between the water closet and

Statement of Facts.

the wash room in the hotel building. The water closet was removed in 1885. From 1873 until the time of the trial, the plaintiff used the building in carrying on the business of keeping a hotel, and resided therein with his family.

The defendant company was incorporated under the act of April 29, 1874, P. L. 73, to supply gas light to the borough of Mahanoy City and persons, partnerships, and corporations residing therein, etc. Its works were located on a lot of ground in said borough, several hundred feet up the creek from the plaintiff's premises, and about the beginning of the year 1875, manufacturing gas from coal was commenced. The waste matter produced in the manufacture, consisting of pitchy and oily substances, impregnated with the smell of gas, was at first discharged into the creek and allowed to float down through the plaintiff's premises. About 1880, the plaintiff having complained that his house was in this manner filled with the odor of gas, the defendant laid a line of pipe along the creek, to a point below the plaintiff's house, to carry off the waste. After some time the pipes became obstructed or out of order, and the waste leaked out at the joints and was again carried by the water to the plaintiff's premises. The plaintiff again complained, and the defendant then turned the waste matter into a pit dug upon its own premises. Testimony for the plaintiff, however, tended to prove that the waste still found its way to the stream, and thus filled the atmosphere in and about the house of the plaintiff with offensive odors.

Testimony for the plaintiff tended to show that the presence of gas in his house affected the health of himself and of members of his family. The plaintiff and his wife both testified, under exception, that a physician, since deceased, who had been called in to attend one of their children, attributed her sickness to the gas that was in the house.[22] [23] There was evidence that several guests of the hotel had left it, on account of the presence of gas in their rooms and throughout the house. The plaintiff testified that he estimated a loss of profits in his business of from $700 to $800 per year; that he kept no book-account of his receipts and disbursements, and could only estimate what that loss amounted to. His wife testified that the business of the hotel had fallen off, but that it began to increase again and had increased for the last four or five years.

Having given a notice that damages would be claimed, under the act of May 2, 1876, P. L. 95, down to the date of trial, the plaintiff was allowed, under exception, to testify that after the commencement of the action he erected two buildings upon his lot, to the west of the hotel building,[21] and to show that tenants of those buildings had threatened to leave on account of the presence of gas therein.[26]

The plaintiff offered in evidence the record of a proceeding in equity, commenced by himself subsequent to the bringing of this action, to obtain an injunction against the defendant gas company, restraining it from discharging waste materials into the waters of North Mahanoy creek, at any point north of the plaintiff's premises. That record showed that on September 23, 1884, a preliminary injunction was granted; that, after hearing on affidavits, the injunction was continued until final hearing or further order, and was still in force; and that a rule for an attachment, for contempt in violating the injunction, was pending and undetermined.

The offer was objected to by the defendant.

By the court: I think I will admit this offer for the purpose of showing the date, in view of the evidence already before the court, showing that the order of the court was after hearing for the defendant, as I understand Judge GREEN's order; but not conclusive of the plaintiff's right to recover: exception.[19]

The testimony of a number of witnesses tended to show that waste matter from the gas works was allowed to float upon the creek after the granting of the injunction.

Testimony for the defendant tended to show that the only noxious smells in the plaintiff's hotel came from the fouling of the stream by slaughter houses and privies, situated above the hotel, and by the plaintiff's own privies; that any odor that might have come from tar or pitch, discharged from the gas works, was beneficial as a disinfectant of the smells from the other sources aforesaid, and that there was no gas in the house, as was alleged by the plaintiff; that the arrangement of the water closet, constructed by the plaintiff, was such as to produce a strong upward draft and carry into the hotel odors which otherwise would not have entered it; that no appreciable injury to the plaintiff's business had been suffered; and that the business of the defendant had been conducted in the ordinary manner,

and, since the first complaint of the plaintiff, every possible effort had been made to prevent the discharge of waste into the creek.

The testimony being closed, the court, PERSHING, P. J., charged the jury in part as follows:

[There is another question which has been raised here as a legal point, and to which I perhaps may as well refer now as later on in my charge to you; that is, that this was a business authorized by the legislature, that it was a lawful business. The charter of the company is in evidence before you showing that they had the authority of the state for the manufacture of gas, but that this will relieve them from responsibility to a private party who is injured is not the law. The charter does not go to that extent. Under the law, and now particularly under our constitution, consequential damages may be recovered from any person or corporation who injures the property or destroys the property of another. There can be no taking of property, and no injury to property, without making compensation on the part of the corporation, although it may be armed with the authority of the state for the business which it follows. And a man's property may be as effectually destroyed by rendering it uninhabitable, destroyed for the purpose for which he desires to use it by rendering it uninhabitable, as it would be to take hold of it and tear it down. In the one case, the act is direct, it is a taking of the property actually; in the other, the damages are consequential,—in consequence of the act on the part of the defendant charged with the offence. We have it laid down by the very highest legal authority that that which is authorized by the legislature, within the strict scope of the power given, cannot be a public nuisance. They could not be indicted for exercising the powers vested in them by the state. But it may be a private nuisance, and the legislative grant is no protection against a private action for damages resulting therefrom.] [1]

[The legislature may authorize a use of property which will operate to produce a public nuisance; but it cannot authorize a use of it which will create a private nuisance, by an actual invasion of one's premises by noxious vapors, malarial gases, or disagreeable smells, without compensation therefor. We not

only have a large number of authorities outside of this state, but our own state authorities are to the same point; that is, that the trade may be strictly lawful and armed with the power of the state; the company may be protected as against the public from an indictment, but it is not protected by its charter from an action by a private party who has sustained special injury in consequence of the noxious smells, gases, vapors, etc., which may be the result of carrying on the business.] [2]  I will call your attention to other principles of law as I go on, if I deem it necessary, in answering the numerous points which have been presented by the counsel on both sides.

Now, what is the evidence to sustain the action of the plaintiff? . . . .

The defendant could only be held responsible so far as it had contributed to make the premises unhealthy and to injure the business of the plaintiff; and if it did not contribute in any degree to inflict the injury upon his person or his property, then it would not be liable at all.  The position taken here by the defence is, and they have offered testimony upon that point, that the odor proceeding from gas, tar, naphtha, operated as a disinfectant of the smells that infested this house, as they claim, from the slaughter house, garbage, and the privies; that is, disinfected those smells and rendered the premises more healthy, and that, instead of being an injury to the plaintiff, it operated as a direct benefit.  Of course, if that is true, no injury was inflicted upon him by the gas company, and it could not be made responsible in damages.

[There was nothing that prevented the smell proceeding from the water closets and the slaughter houses from entering the premises of the plaintiff, any more than there was to prevent the gas from entering.  He has described to you the condition of his premises.  Whilst we do not think Mr. Keiser was bound to erect barricades against the infliction of a nuisance upon him by other parties, yet the condition of his premises is a matter for your consideration, as bearing upon the question whether other noxious vapors, other noxious smells, did not find their way into that house, there being no more difficulty about their getting in, as claimed here by the defendant, than there was about the smell of gas getting in.  It was alike open to all offensive smells and noxious vapors proceeding from that creek in that neighborhood.] [3] . . . . .

Charge of Court below.

[Now, having considered all this testimony produced on both sides, the question for you to determine would be whether the plaintiff has a right to recover. If you find that he has the right to recover, then it devolves upon you to fix the amount of his damages. Damages are said to be compensatory; that is, in popular language, sufficient to make a man whole, or they may go beyond that and be what are called vindictive damages; that is, a party may under certain circumstances recover what will make him whole, and in addition, what will punish the party who has inflicted the injury. The claim made here on the part of the plaintiff is for what are called vindictive damages. It is alleged that the conduct of the defendant was such as to require a jury to impose more than what would be mere compensation, to give an additional amount so as to punish the defendant. It will be for you to determine, if you find for the plaintiff, what his damages shall be, how you will assess them. It has been said, in cases of this kind, that a mere invasion of a right would be sufficient to authorize nominal damages, damages that would be less than compensation; that has been decided in a number of cases.] [4] . . . . .

A number of points have been presented. The plaintiff asks us to charge you as follows:

1. If you find from the evidence that in the process of manufacturing gas at the defendant's works large quantities of waste and refuse matter and materials were generated and produced; that said product was impregnated with the odor of gas, and other foul, noisome and offensive smells and vapors; that the defendant emptied and discharged said product into the waters of North Mahanoy creek, and that the same floated upon and was carried by the current of said stream into, upon and through the plaintiff's messuage and premises; that thereby the air in and around the plaintiff's messuage and premises was made and became corrupt, impure, foul, unwholesome and offensive, and that by reason thereof the messuage and premises of the plaintiff became and were made uncomfortable, that the plaintiff and his family were incommoded and annoyed in the use, occupation and enjoyment of the same, you will find a verdict for the plaintiff.

Answer: We affirm this, if you find the facts to be as stated here; and we call your attention to what we have already given

Charge of Court below.

you from the authorities, that the injury must be substantial. The fact that there is some smell unavoidable in the manufacture of gas, is shown by the testimony here all around. The Supreme Court say that a certain degree of offensive odor is unavoidably incident to the business, and that must be endured by the public. This was said in a case against a gas company somewhat similar to the one we have before us. With this statement of the law we will affirm this point.[5]

2. If you find a verdict for the plaintiff you will then inquire :

First, to what extent the plaintiff has been injured in the use, occupation and enjoyment of his messuage and premises; and in so doing, you may take into consideration the inconvenience and discomfort, if any, suffered by the plaintiff and his family, the fact that the place was licensed as a hotel and that he carried on therein the business of an inn-keeper, the patronage and business the hotel had acquired before the committing of the wrong complained of, and the loss of patronage and business, if any, he has sustained by reason thereof ; and allow him for such injury such an equivalent in damages as a fair and reasonable consideration of the testimony warrants.

Answer : That we affirm, in connection with what we said in answer to the other point.[6]

Second, to what extent, if any, the plaintiff was injured in his health ; and in so doing, you may take into consideration the nature and character of the disease, the suffering, if any, he endured, the money, if any, he expended for medicine and medical attendance; and also allow therefor such an equivalent in damages as in your judgment a fair consideration of the evidence warrants.

Answer : We have already virtually said yes to this ; but, so far as the expenditure of money is concerned, there is no evidence here. The plaintiff has not shown in his own or any other evidence what amount of money he expended for doctors, in consequence of sickness in his family. He does not show that he even had a physician for himself. The only evidence of having a physician was that in reference to the little girl, and there it was omitted to state what amount of money he paid to the doctor for his services. That certainly could have been in his power to have told the jury. I mention this, so that you will exercise your reasonable judgment in ascertaining the amount.[7]

Charge of Court below.

3. If, upon a fair and just consideration of all the evidence in the case, you should come to the conclusion that the injury complained of and sustained by the plaintiff was characterized by wantonness, vexation, oppression or gross carelessness on the part of the defendant, then you may give the plaintiff, in addition to the damages above specified, such reasonable sum as in your judgment the evidence may warrant. In determining this question, you may take into consideration whether or not the injury complained of was continued after the bringing of the present suit; the fact that an injunction was issued by the court to restrain the defendant, and whether or not said injunction was violated by the defendant.

Answer: We affirm this, calling your attention to what we have already said on the subject of vindictive damages. This is a request that you give what are called vindictive damages; damages in addition to the loss which the plaintiff has actually suffered, if you find he has suffered any loss.[8]

On the part of the defendant we were asked to instruct you:

1. The defendant, the Mahanoy City Gas Company, was incorporated by letters patent, dated September 21, 1874, with the right and power to erect in Mahanoy City gas works to manufacture illuminating gas to supply the streets and inhabitants of Mahanoy City with light; that the business, carried on in pursuance of and under said charter, being by law a legal and authorized business, cannot be held in law or equity to be a nuisance, although it may occasion inconvenience and discomfort to inhabitants being in proximity to said works, by reason of the escape of gaseous and noxious smells.

Answer: We have already said to you that this company had a charter, and therefore its business is a lawful business, and probably so far as the public was concerned it could not be interfered with. No indictment could lie against it for what would be called a common nuisance, a common injury to the public. But, if the plaintiff here has sustained a special damage, a damage outside of that which the general public was called upon to endure in the manufacture of gas, also calling your attention to the rule of law, that some smell is unavoidable, we could not affirm this point. We do not affirm it just as it stands here, in the broad terms in which it is put. It would depend upon circumstances.[9]

Charge of Court below.

3. That the manufacture of gas by the defendant, as stated in the preceding point, for the purpose of supplying public and private wants, is impressed with the character of lawfulness and had the sanction of the supreme legislative power of the state ; and though the carrying on of said business within the scope of chartered rights may be injurious to private rights, and may subject private persons to injurious and disagreeable smells, the defendant cannot be held liable to pay damage therefor.

Answer: We answer this in the negative.[11]

4. That, under the charter of the Mahanoy City Gas Company, the defendant cannot be held liable to the plaintiff for the injury complained of by him, if the business of making illuminating gas was conducted in a proper manner under the chartered rights of the company, unless the plaintiff has shown by the evidence that the defendant was guilty of negligence in the making of gas and conducting said business, whereby the plaintiff received said injury.

Answer: We answer this in the negative.   We have already read to you from the authorities that while the business may be entirely lawful, yet if it is carried on so that injury results to a private individual, injury above that which is sustained by the public, he may have his action.   We think the proposition is stated too broadly here.[12]

5. That if the plaintiff covered over the creek with planking through his lot and erected one or more water closets over said creek and connected the same with his hotel and yard, whereby the gases floating in said creek and under the planking were permitted to escape into his house, he thereby contributed to the injury of which he complains, and the verdict should be for the defendant.

Answer: We answer this in the negative.[13]

6. The plaintiff was bound to use reasonable care and precaution to protect his house from noxious and unwholesome smells in said creek, and if he neglected said duty and made a connection between his house and the creek, whereby the odors from the creek and his water closets passed into his house, he was guilty of contributory negligence, and the verdict must be for the defendant.

Answer: As a question of law we negative this.   No question of contributory negligence arises in this case.[14]

Charge of Court below.

8. If the plaintiff knew that noxious smells entered his house, through the openings made in the culvert over the creek for a water closet, and through the opening made in the basement wall next to the creek, it was his duty to close such openings; and if he neglected to close the same, he cannot recover in this case and the verdict must be for the defendant.

Answer: We answer this in the negative.[16]

9. The loss of profits from boarders and from casual and transient visitors is too remote and uncertain to constitute any measure of damages in this case, and if the plaintiff has not proved any other damage, the verdict must be for the defendant.

Answer: We answer this in the negative, although it presents a question of some difficulty. The evidence was admitted and I have discussed it in what I have said to you, and therefore could not consistently affirm the point now. I have examined the case, and I find that in Sedgwick on Damages which I think would authorize the admission of the testimony as you have it before you; that is, as to the loss sustained. I find also a case in our own Supreme Court, Hanover R. Co. v. Coyle, 55 Pa. 396, where a party was injured in his person and his property both, by a railroad, and the loss of his profits was ruled to be admissible. With the explanation I have already given you of the testimony which accompanies the evidence of the loss sustained; that is, that he kept no account of what he took in or what he paid out, I leave the matter for your consideration and therefore negative this point.[17]

—The jury returned a verdict for the plaintiff for $3,000. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning, inter alia, for error:

1–4. The parts of the charge embraced in [ ][1 to 4]

5–8. The answers to the plaintiff's points.[5 to 8]

9. The answer to the defendant's point.[9]

11–14. The answers to the defendant's points.[11 to 14]

16, 17. The answers to the defendant's points.[16 17]

19. The admission of the plaintiff's offer.[19]

21, 22. The admission of the plaintiff's offers.[21 22]

26, 28.* The admission of the plaintiff's offers.[26 28]

* The specifications numbered 21, 22, 26, 28 did not set forth the names of the witnesses whose testimony was objected to and admitted.

Arguments.

*Mr. T. H. B. Lyon* and *Mr. J. W. Ryon*, for the appellant:

1. To make the defendant liable in this action, it was incumbent on the plaintiff to show that the alleged injury was the result of negligence. The manufacture of gas by the defendant corporation is a lawful business, and the emission of gases and smells, as a necessary result of it, cannot be declared a private nuisance, when the business is conducted without negligence. By its charter, the company is exempted from liability for anything which necessarily results from the performance of its corporate duty and the exercise of its rights: Wood on Nuisances; §§ 753, 755, 757; Commonwealth v. Reed, 34 Pa. 275: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Strawbridge v. Philadelphia, 2 Penny. 419.

2. The plaintiff had covered over the channel of the creek throughout the entire length of his lot. If he had not done so, who can say that odors so volatile as those complained of in this case, would not have escaped long before they reached his building? Such being the circumstances, he cut a hole through the plank covering, erected a water closet, and cut a communication between it and the hotel, so that any odors coming from the creek could pass into and through his house without obstruction. These facts clearly raised the question of contributory negligence. There is no doctrine better settled than that contributory negligence will defeat a right of action: Railroad v. Norton, 24 Pa. 465.

3. Proof of sickness of inmates of the house may be admissible as bearing on the rental value of the premises, but not as a substantive ground for damages: Clark v. Rochester, 50 N. Y. ——; s. c. 44 Hun 271. If the doctrine of that case is correct, there was clear error in the charge on the subject of the measure of damages. There was not a particle of testimony as to the rental value of plaintiff's hotel. Moreover, loss of profits from transient custom at the hotel is too uncertain and remote to serve as a basis of damages. Nor was it proper to submit to the jury the question as to the extent of such losses, when the plaintiff himself was wholly unable to tell their amount. And it was error to permit the jury to give exemplary damages, as there was no evidence of any wanton, vexatious or oppressive conduct on the part of the defendant.

4. It was clearly improper to instruct the jury to try whether

Arguments.

the injunction had been violated, and it was error to admit the
record of the equity proceeding: 1 Phillips Ev., 358; Owens
v. Dawson, 1 W. 149. The testimony the admission of which
is complained of in the twenty-second and twenty-eighth assign-
ments was hearsay. And in permitting the plaintiff to prove
injury to his buildings erected after the commencement of the
suit, the court virtually allowed the introduction of a new cause
of action. Those buildings had no existence when the suit
was brought, nor until after issue joined. An injury to them
could not then have constituted any part of the cause of action.
Nor could the record of this suit be pleaded in bar, if the de-
fendant were hereafter to be sued on account of these buildings,
as there is nothing on the record to show that the verdict covers
any such injury.

*Mr. G. H. Gerber* and *Mr. F. W. Bechtel*, for the appellee:

1. That the court below was right in its application of the
law of nuisance to the facts of this case, is shown by the fol-
lowing authorities: Wood on Nuisances, §§ 429, 494, 495, 746,
747, 750–752. The defendant is a private, not a public cor-
poration, being invested with the right of eminent domain
only to a limited extent, to wit, for the purpose of laying
pipes, etc., in streets and highways; and it has no more right
to create and maintain a nuisance than an individual engaged
in manufacturing gas would have. It is clear that an individ-
ual would be responsible for an injury resulting from the dis-
charge of refuse into the waters of this creek, which is not an
unavoidable and necessary incident of the business, and why
should not the defendant be responsible?

2. The case at bar is ruled by Pottstown Gas Co. v. Murphy,
39 Pa. 257; and the decision in Baltimore etc. R. Co. v. Fifth
Baptist Church, 108 U. S. 317, in so far as this court may re-
gard it as authority, will be found conclusive of all the ques-
tions raised upon this record. Even public corporations are
liable in many instances for injuries from nuisances: Shuter v.
Philadelphia, 3 Phila. 228; Briegel v. Philadelphia, 135 Pa.
451. That the business occasioning the nuisance is necessary
and useful to the public, is no defence: Smith v. Phillips, 8
Phila. 10. The plaintiff had a right to use his property for all
lawful purposes, and was not bound to erect barricades to pro-

Opinion of the Court.

tect it from the defendant's nuisance. The question in the case is one of nuisance, not of negligence: Pottstown Gas Co. v. Murphy, supra; and no question of contributory negligence can arise.

3. The act of May 2, 1876, P. L. 95, was intended to obviate the necessity of bringing a second action to recover any damages suffered between the commencement and the trial of the suit. The notice which it provides for, is a substitute for a second action. Having given such notice, the plaintiff would be precluded by the recovery in this case from hereafter suing for damages to his new erections. Those buildings were erected upon the premises described in the narr, and the admission of testimony relating to them was therefore not the introduction of a new cause of action. The plaintiff had a right to erect them notwithstanding the pendency of the suit, and in a second action for damages suffered after the institution of the present suit, any injury to them would be admissible. Evidence of such injury was properly received under the notice, which took the place of another action.

OPINION, MR. JUSTICE WILLIAMS:

The manufacture of illuminating gas, in a town or city, by an incorporated gas company, is a lawful business. If the ordinary processes of manufacture are employed and conducted in the ordinary manner, equity will not restrain the prosecution of the business; but, if the company neglects to make use of the ordinary processes or the ordinary precautions, and harm is thereby done to others, the negligence will justify intervention by a court of equity to restrain its continuance, and sustain an action at law for the recovery of damages by the injured party. The right of action in such cases grows, not out of the exercise of its corporate franchises by the company, but out of the negligence of which it is guilty in the manner of conducting its business. Artificial persons are bound equally with natural persons by the maxim, sic utere tuo ut alienum non lædas, and are liable in like manner to those who may be injured by their neglect to observe its requirements: Pottstown Gas Co. v. Murphy, 39 Pa. 257.

The plaintiff in this case seeks to recover damages, not for the establishment of the gas works or the manufacture of gas

Opinion of the Court.

in his neighborhood, but for negligence in the manner in which the manufacture in conducted.   He alleges that the waste from the works is turned into the North Mahanoy creek, a small stream which passes the gas works and crosses his own lot, and that by reason of the smell of gas arising from the waste his house is filled at times with offensive odors, affecting injuriously the health of himself and family and the comfort of his guests. The defendant denies that the unwholesome odors, noticeable at times in the plaintiff's house, are due to waste in the stream or are the odors of gas, and asserts that they are due to the presence of slaughter houses and privies along the stream, by which its waters are loaded with impurities, and to the defective arrangement of the privies connected with the plaintiff's hotel and stables.   The defendant further denies that any appreciable injury has been sustained by the plaintiff by reason of the odors complained of, whatever may be their source.

Two questions are thus raised for consideration : first, is the defendant guilty of negligence in the management of the business of producing gas ?   This is a question of fact, which was submitted to the jury upon all the evidence in a manner of which neither party can justly complain.   The remaining question relates to the measure of damages and is brought to our attention by the fourth, sixth, eighth, nineteenth, and twenty-third assignments of error.

The rule is well settled, as we have said in an opinion just filed in the case of Robb v. Carnegie,* that a loss in the selling or rental value of real estate by reason of the establishment of a lawful but undesirable business in the vicinity, does not give a cause of action.   A licensed hotel or a livery stable, a saloon or a meat market, and many other kinds of business are calculated to affect the desirability of a neighborhood as a place of residence, and consequently to depreciate the value of adjoining property, but the owners of such property are without legal remedy for their loss.   Nor will the fact that the business of the adjoining owner is a source of some personal discomfort and annoyance, give a right of action, so long as the business is lawful and conducted in a lawful manner.   There must be substantial injury done, and the act or negligence complained of

* To be reported with the Western District cases hereafter.

must be the cause of the injury. If, therefore, the jury find that the defendant has been guilty of negligence in the care of its waste, and that the plaintiff has suffered a substantial loss as the result of the presence of the waste in the stream, then a cause of action has been established and compensation should be made for the loss sustained.

What is that loss? The burden of showing its nature and extent is on the plaintiff. If sickness of himself or other members of his family is alleged, the character and duration of the sickness should be shown, and the expenses or suffering incident to it, and the fact that it was caused by the presence of the odor arising from the waste should be made to appear. If loss of business is alleged, this should be shown with the like degree of certainty. The facts from which the jury may determine whether there has been a loss of custom at the hotel, due to the presence of the odor of the waste, and how great that loss has been, should be shown. It is not enough for the plaintiff, after having shown that a few transients went elsewhere for a night or failed to return to his hotel on their next visit to Mahanoy City, to guess that his loss of profits due to this single cause would reach eight hundred dollars per annum. If he has any knowledge of what his income was during the six years preceding the bringing of this suit, whether there was a falling off in its amount, and what that falling off was, he should lay the facts before the jury. If he does not know the facts or does not choose to disclose them, he cannot substitute a mere conjecture. Absolute accuracy is not required, but such facts as fairly lead to a conclusion and guide the jury in fixing the amount of his loss from this cause, should be laid before them.

The plaintiff also claimed exemplary damages. This subject was brought to the attention of the learned judge by the plaintiff's third point, which asked that the jury be instructed that "In determining this question, you may take into consideration whether or not the injury complained of was continued after the beginning of the present suit; the fact that an injunction was issued by the court to restrain the defendant, and whether or not said injunction was violated by the defendant." The fact that the defendant continued the negligent practice complained of after the suit was brought, was, if shown, a proper subject for consideration in determining whether exemplary

Opinion of the Court.

damages should be awarded or not.  But the equity case was pending and undecided when this case was tried.  The plaintiff had a right to go into equity in order to restrain, and to go into a court of law to recover damages for the negligent manner of dealing with the waste of the gas works ; but the fact that an action at law was pending would not help a chancellor in reaching a proper conclusion, nor would the fact that a bill was pending in equity be of any service to a jury in settling the damages which should be awarded to the plaintiff.  Equally without significance was the fact that an application for an attachment was pending in the equity case.  The application is the act of the plaintiff.  When it is heard and determined, the defendant, if found guilty, will be punished for the contempt in the court whose mandate he has disregarded.  But the jury in this case have no right to inquire " whether or not said injunction was violated by the defendant," and punish it for such violation by imposing exemplary damages upon it.  It is not the violation of an order of a court of equity, but some act of wantonness directed toward the plaintiff, that must be found by the jury as a basis for the imposition of exemplary damages.  If this was not so, it might happen that the court whose process it is charged has been violated, might on full hearing acquit the defendant of the alleged contempt, and discharge the rule for the attachment; while, in the meantime, a jury sitting in another court may have convicted and punished him for the offence which a chancellor after full investigation finds that he did not commit.

For the reasons now given,

The judgment in this case is reversed, and a new venire ordered.