# Hamilton et al. *v.* Bates et al., Appellants.

*Equity—Nuisance—Operation of ice plant—Residential neighborhood—Noise and vibration—Findings of fact.*

1. Findings of fact by a chancellor that the operation of an ice plant is a nuisance, based on sufficient evidence, will not be reversed, in absence of clear error.

2. The mere fact that manufacturing establishments are located within a few squares of an ice plant, alleged to be a nuisance, does not warrant the operation of such plant adjoining private residences so long as the more remote industrial developments had not destroyed or interfered with the quiet of the immediate vicinity.

3. The operation of such a plant will be enjoined if it appears that its noise and vibration constitute a nuisance to the residents of the immediate neighborhood.

Argued October 1, 1925. Appeal, No. 1, May T., 1926, by defendants, from decree of C. P. Dauphin Co., Equity Docket No. 731, awarding injunction, in case of William B. Hamilton et al. v. Harry H. Bates et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction to restrain operation of ice plant alleged to be a nuisance. Before WICKERSHAM, J.

The opinion of the Supreme Court states the facts.

Injunction awarded. Defendant appealed.

*Error assigned* was, inter alia, decree, quoting it.

*T. J. McCarrell,* of *Stroh & McCarrell,* for appellants. —Defendants' land is unrestricted. Its neighborhood is not essentially residential nor quiet, but is an uptown mixed residence and business district, noisy with business activity and traffic; and its residents are largely railroad people accustomed to noises: Collins v. Iron Works, 227 Pa. 326; Rhodes v. Dunbar, 57 Pa. 274.

The operation of the defendants' ice plant as conducted by them is not a nuisance per se, nor is it a nuisance in fact: Rhodes v. Dunbar, 57 Pa. 274; Huckenstine's App., 70 Pa. 102; New Castle v. Raney, 130 Pa. 546; Com. v. Miller, 139 Pa. 77; McCaffrey's App., 105 Pa. 253.

*John R. Geyer,* with him *Paul G. Smith,* for appellees. —The neighborhood in question is so predominantly occupied by residences that it must be classified as a residential district and, therefore, entitled to the peace and quiet incident to the character of the section in which it is located: Edmonds v. Duff, 280 Pa. 355; Tyson v. Coder, 83 Pa. Superior Ct. 116; Prendergast v. Walls, 257 Pa. 547.

The operation of appellant's ice plant is a nuisance in fact, and the decree was properly entered: Carnegie Boro. v. Ry., 234 Pa. 472; Sparhawk v. Ry., 54 Pa. 401; Dennis v. Eckhardt, 3 Grant 390; Hustleton v. Park, 256 Pa. 255; Ladies Decorative Art Club's App., 22 W. N. C. 75; Harrison v. St. Mark's Church, 3 W. N. C. 284.

OPINION BY MR. JUSTICE FRAZER, November 23, 1925:

Plaintiffs' bill was for an injunction to restrain the operation of defendants' ice plant located between an apartment house belonging to one of the plaintiffs and a double dwelling belonging to the other, all three properties being situated on Woodbine Street in the City of Harrisburg. The bill alleged the operation of the plant was a nuisance owing to noises and vibrations resulting therefrom. Previous to being converted into an ice manufacturing establishment, defendants' premises had been used alternately as a bakery and meat shop, and plaintiffs, on learning of the new use to which the premises were to be put, warned defendants that legal steps would be taken to protect their rights in case the operation of the machinery and conducting of the proposed

business interfered with the enjoyment of their premises. Defendant assured plaintiffs no annoyance would result from carrying on the industry. After hearing in the court below, defendants made alterations in the plant in an endeavor to remove, as far as possible, the noise and vibration complained of, after which further testimony was taken. The court below found, as facts, that the neighborhood in which the manufactory was located, was residential in character and that its operation was attended by vibrations which were communicated to the adjoining premises and continued day and night during the time the plant was in operation, and tended to annoy the occupants of adjoining premises, depriving them of their sleep, comfort and rest and injuriously affecting their health, rendering their properties uncomfortable for dwelling purposes and materially affecting their respective market values. The court further found the improvements made subsequent to the first hearing relieved, to some extent, the vibrations and noises but did not entirely eliminate them and that the annoyance continued to exist to an unreasonable extent. An injunction was granted restraining defendants and their employees from further operating the plant, and defendants appealed.

Appellants recognize the rule that findings of a chancellor, based on sufficient evidence, will not be reversed in absence of clear error but earnestly contend that the evidence adduced was insufficient to support the conclusion that the neighborhood in question was residential in character or that the operation of defendants' manufactory was a nuisance.

With respect to the first contention, the court below found: "The neighborhood immediately surrounding the premises in question is essentially residential in character. It is quiet and well adapted for persons desiring homes; the houses are of modern structure and are in large numbers used by the owners of their own property. There are a few small retail business establishments,

such as are ordinarily found in residential districts in this city, but no manufacturing establishments or factories of any kind or character in the immediate vicinity to disturb the ordinary peace and quiet of the home."

Defendants base their argument on the fact that within a radius of a few blocks, there is located and operated the main line of a railroad and freight yards along which are manufacturing plants. There is also a milk depot, warehouse, slaughter-house, garage, etc., and also a trolley line passing near the premises, all of which make considerable noise. As to these, the court below said, "We cannot find that the main line and freight yards of the Pennsylvania Railroad Company, or the manufacturing plant of the Pennsylvania Milk Products Company are in the immediate vicinity of the property under consideration. The other retail business houses do not change the character of the neighborhood. There are few, if any, residential sections of this city, which are free from the noise of the railroad or street cars, and the retail stores and garages always follow the residential districts."

We are of opinion the court below properly applied the legal principles established in numerous decisions of this court. The mere fact that manufacturing establishments are located within a few squares of the ice plant did not warrant the operation of an annoying business adjoining plaintiffs' homes so long as the more remote industrial developments had not destroyed or interfered with the quiet of the immediate community. This principle was recognized in Krocker et al. v. Westmoreland Planing Mill Company, 274 Pa. 143, where the operation of a planing mill was restrained in the immediate locality, containing no business of a disturbing character, though within a larger radius there were shops, factories, railroads, etc.; also in Edmunds v. Duff, 280 Pa. 355, where the location of an amusement park was restrained in a section rapidly building up as a residential district, though there were, within a short

distance, a large flour mill, a freight yard and a general business district, confined practically to a particular street.

There is, likewise, ample evidence to sustain the conclusion that the ice plant, as operated, was a nuisance to plaintiffs and other residents of the immediate neighborhood, owing to the noise and vibrations resulting from such operation. In the front and on the first floor of defendants' building is located a 60-horse-power electric motor, used to drive an air compressor and other devices. There are also two five-horse-power motors in continuous operation. The air compressor is equipped with a fly wheel, six feet in diameter, driven by a 12-inch belt, and a traveling crane runs the length of the building and is operated by a motor; these appliances constitute a part of the manufactory equipment. The plant has a capacity of approximately twenty-two tons of ice every twenty-four hours. The product is frozen on the second floor and lowered by elevator to the floor below from where it slides into a storage room. The factory is substantially in continuous operation, not only on week days and nights but Sundays. Witnesses, residing in the adjoining buildings and also in the immediate neighborhood, testified in effect that the vibration was continuous and distinctly noticeable, especially at night; that it interfered with rest and sleep; that the noise of the motor and the crane was practically continuous; that in some cases it was injurious to the health of the residents, the physician of one of the tenants testifying that the constant noise would have a tendency to cause persons to suffer from nervous breakdown. One of the plaintiffs in the bill had, in fact, sold his property and moved his family to a distant part of the city because of the noise arising from the operating of the machinery in the factory. There is also evidence that the walls of the adjoining apartment house cracked in places and that it was difficult to secure tenants for the apartments.

After the changes made in defendants' manufactory, a further hearing followed, at which many of the witnesses, who testified previously, appeared and stated that while the noise had been slightly lessened, the conditions were substantially as annoying as before. It is true there were witnesses, called on behalf of defendants, who testified to the contrary. The chancellor filed an elaborate report reviewing in detail the evidence offered by both plaintiffs and defendants and reached the conclusion that, "After carefully weighing, considering and studying the evidence upon one side and the other we find the great weight of the credible testimony to be in support of the facts which we have heretofore found." This conclusion is fully supported by the testimony and we find no reason for disturbing the decree entered.

The decree of the court below is affirmed at the cost of appellants.