## Tornetta v. Township of Whitemarsh

*James R. Caiola*, for appellant.

*Edward J. Wisniewski*, for protestants.

*John E. Flynn*, of *High, Swartz, Flynn & Roberts*, for Board of Adjustment of Whitemarsh Township.

DANNEHOWER, J., November 17, 1948.—This case is before us on an appeal by a property owner from the decision of the Board of Adjustment of Whitemarsh Township, Montgomery County, Pa., voiding a permit issued by the building inspector for the erection of a motor truck terminal garage in an industrial zone.

On May 4, 1948, Leonard Tornetta, appellant, applied to the building inspector of Whitemarsh Township for a building permit to erect a motor truck terminal garage upon premises which he recently purchased, located on the southwest corner of Elm and Sandy Streets, Spring Mill. After the permit was issued, Rose Wojden and Frank Heleniak, residents of this community, filed an appeal from the decision of the building inspector. This appeal was publicly

heard by the board of adjustment, which reversed the building inspector and voided the permit. Thereafter Leonard Tornetta filed an appeal in this court to review the board's decision and the case was submitted on the record.

Appellant's premises are located in an industrial zone as shown on the map, which is part of the "Whitemarsh Zoning Ordinance" effective as of June 2, 1941. Article X, sec. 1001 of this ordinance, as amended April 1, 1946, defines and enumerates the permitted uses of property in an industrial zone, and provides "A building may be erected, altered, or used and a lot or premises may be used for any lawful purpose except the following . . ." Then follows a list of prohibited uses, but appellant's business use is not among them. Filling stations, garages and truck terminals are not mentioned. This section concludes:

"Any use which may be so noxious or offensive, by reason of the emission of odor, dust, fumes, smoke, gas, vibration, light or noise as to constitute a nuisance, *or any use which may be so dangerous as to constitute a public hazard*".

The board found as follows, inter alia:

"Whether or not this would, in itself (fumes, vibration and noise) constitute a nuisance in the district in question, and thereby render the use of land for this purpose, illegal, is considered moot in the light of the fact that it does appear that a public hazard will be created. The board considers the narrow streets in the vicinity entirely inappropriate for the operation of large vehicles of the size in question. This will constitute not only interference with the present uses of these streets, but will be a hazard to the residents, and more particularly to the children of the vicinity who must use these streets for travel to and from school. The fact that there is now vehicular traffic on these streets, including some truck travel, does not lessen

the hazard which would be created by markedly increasing the use of the streets by heavy vehicular equipment."

From the testimony before it, the board found that appellant planned to build a three-story trucking terminal for the storage of his equipment, which consists of 18 trailers, 12 tractors, 2 trucks and 3 automobiles. His normal activities begin at 4 a.m. and last until 6 p.m. on weekdays, though occasionally the building may be in use at other hours. Within the terminal there will be little transfer of goods, and, in addition to minor repairs, only lubrication and storage. The board likewise found that the trucks would be traveling Hector, Elm, End and Sandy Streets to and from the terminal. The average paved cartway of these streets is from 20 to 22 feet in width. The evidence also showed that these streets are in constant use by large trucks, including Tornetta's en route from industrial plants in the area to Trenton, Philadelphia and Reading.

Although this district is zoned industrial to the north and west of the Tornetta property, the board found that the area was predominantly of a settled residential character; that a number of night-shift workers from nearby factories reside therein and that numerous small children live in the vicinity. To the east are two fairly substantial factories and across the street a medium-sized chemical plant. The tracks of the Reading and Pennsylvania Railroads bound the community to the south.

Appellant contends, that in view of the industrial character of the neighborhood, use of the premises as a truck terminal will not create a public hazard or nuisance within the language of the ordinance; that the action of the board was unreasonable, arbitrary, an abuse of discretion, and without any substantial relation to public health, safety, morals, or general

welfare; and that it therefore deprives him of property without due process of law.

A person aggrieved by any decision of a board of adjustment may appeal to the common pleas court: The Second Class Township Law of May 1, 1933, P. L. 103, as added to by the Act of July 10, 1947, P. L. 1481, par. 47, 53 PS §19093-2007. Nevertheless, the findings of the board are entitled to great weight: Perelman et al. v. Yeadon Borough Board of Adjustment, 144 Pa. Superior Ct. 5, 18 A. (2d) 438 (1941); and should not be reversed unless there has been a flagrant abuse of discretion: Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 178 Atl. 813 (1935). It is not the duty of the courts to take the place of the zoning authorities, but as was pointed out in Taylor v. Haverford Township, 299 Pa. 402, 149 Atl. 639 (1930), such authorities are subject to have their work set aside where its application to a particular property is properly found on judicial review to be unreasonable or confiscatory.

"There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations": White's Appeal et al., 287 Pa. 259, 266, 134 Atl. 409, 412 (1926).

The board's action was based on the narrow ground that the contemplated use of the premises would create a public hazard. This court said in Township of Whitemarsh v. Chemical Concentrates Corp. (No. 2), 62 Montg. 258, 262 (1946):

"We have not been able to find among the reported cases in Pennsylvania a judicial definition of a public hazard nor has any such been called to our attention. The words 'public hazard' are used in the ordinance to describe a use prohibited in the industrial zone as created by the ordinance. It is a matter of common knowledge and judicial declaration that a certain amount of noise, dust, smoke, odors, vapors, etc., are a necessary and unavoidable concomitant with many industrial enterprises, and those who reside in or near industrial areas or zones must accommodate themselves to the disadvantages of the localities in which they have chosen to live. . . . Those who framed and adopted the Whitemarsh zoning ordinance must have known these facts and used the words 'public hazard' not as synonymous with a private or public nuisance, but to designate something which is a real, substantial and serious menace to the public health or safety."

Since the words "public hazard" are still used in the ordinance, we may assume the Whitemarsh authorities did not differ with our interpretation.

To that we may add that the list of specifically prohibited industries include a type which might well be hazardous under any circumstances, in any locality, no matter what precautions were taken. For instance, among others the following are excluded from industrial zones: Insect poison manufacture, fireworks or explosive manufacture, match manufacture, sulphuric, nitric, or hydrochloric acid manufacture, and oil, shellac, lacquer, turpentine or varnish manufacture. In using the term "public hazard", the framers of this ordinance had such industries in mind.

"General expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions": Frederick's Estate, 333 Pa. 327, 331,

(1939). See also Derk et al. v. Zerbe Township, 322 Pa. 350 (1936), and authorities there cited.

The board found that locating a truck terminal on these premises would create a public hazard because of the narrow streets the trucks would use and the large number of children in the vicinity. The fact that the streets are already used by large trucks, including Tornetta's, is not considered important, for the board is concerned about the increase which would result from appellant's building his garage. In other words, the board ruled that because there would be more trucks using these streets a public hazard would be created. To the board a public hazard is something more than a nuisance; it is a real, substantial, and serious menace, such as a plant which manufactures acids, explosives, or poisons.

It is readily apparent that the board went beyond the range of its discretion in reaching its conclusion. To hold that running trucks into an area for storage is the same kind of hazard as a fireworks factory is unreasonable. While it cannot be denied that every motor vehicle, regardless of its size, can bring death and destruction, they are not per se dangerous instrumentalities to be excluded from the community as public menaces. It must be borne in mind that no matter what use was to be made of the premises in question, an increase in truck travel in the area could be expected. Unless the land is to lie idle, a public hazard will be created under the board's reasoning. A similar problem was before this court in Cohen et ux. v. Abington Township Zoning Board of Adjustment, 43 D. & C. 362 (1941), where it was alleged that gas stations create a traffic hazard. The evidence in that case showed that they did not. See also Wunderle et al. v. Board of Adjustment of the Borough of Hatboro, 62 Montg. 231 (1946) ; compare Sun Oil v. City of York, 38 D. & C. 678 (1940).

Although the board considered it moot, the question whether appellant's contemplated use will create a nuisance may also be disposed of. Whether or not a particular business is a nuisance or not depends entirely upon the character of the neighborhood. What is reasonable near a steel mill may not be reasonable in an agricultural community. In mining and manufacturing towns, people must expect that their homes will be more difficult to keep clean than if they lived on a farm. Since the objections to a truck terminal, like those to a gas station, include noise, odor, fumes, vibration, lights, etc., the cases which deal with gas stations may be considered as authority in discussing whether a truck garage will be a nuisance: See Carney v. Penn Oil Co., 291 Pa. 371, 379, 140 Atl. 133, 135 (1928).

It is well known that a gas station is a nuisance per se in a residential zone, although it would not be in a section largely devoted to business purposes: Phillips v. Donaldson, 269 Pa. 244, 112 Atl. 236 (1920) ; Unger v. Edgewood Garage, 287 Pa. 14, 134 Atl. 394 (1926). It has also been held that a residential section may exist within a commercial zone and that the building of a gas station may be enjoined there: White et al. v. Old York Road Country Club et al., 318 Pa. 346, 178 Atl. 3 (1935).

But in this case, the evidence would not support a finding that appellant's premises were within a residential zone. The board mentioned the factories, the chemical plant, and the railroads. Whatever fumes, vibrations, and noise might result from a truck terminal would seem insignificant with two railroads and a chemical plant within a short distance. The question is not whether a trucking terminal emits fumes, smoke, gas, and noise, but whether such operations would be a nuisance as a matter of law at this spot. Though these residents may later come into court and show

that by careless operation the terminal has become a nuisance in this location, it cannot be said to be a nuisance per se so that it may not be built. See Burke et al. v. Hollinger, 296 Pa. 510, 146 Atl. 115 (1929). If the terminal is operated and maintained so as to constitute a nuisance, the residents have a remedy in equity to restrain such operation.

After a careful consideration of the entire record and the law, we must conclude that the action of the board in reversing the building permit issued by the building inspector was arbitrary and unreasonable, and not within the meaning of public hazard as used in the zoning ordinance.

And now, November 17, 1948, for the foregoing reasons, the appeal is sustained, the decision of the board of adjustment is reversed, and the building permit heretofore issued declared valid.