## Morgan et al. v. Zuckerman et al.

*Carl R. May* and *Charles A. May*, for plaintiffs.

*Arthur Markowitz*, for defendant, Zuckerman.

SHERWOOD, J., February 18, 1935.—The pleadings in this case consist of a bill in equity filed September 21, 1934, accompanied by injunction affidavits and a bond duly executed by the plaintiffs and approved by the court, the entry of appearance by both defendants, a preliminary injunction awarded as of September 21, 1934, and an answer filed by Bernard Zuckerman, one of the defendants, on October 15, 1934. The court, with the consent of all parties, dissolved the preliminary injunction in so far as it applied to the Western Maryland Railway Company. The issue raised by the pleadings is whether or not the preliminary injunction heretofore awarded by the court should be made perpetual. Requests were duly made by the parties for findings of fact. The court adopts its own findings of fact.

### Findings of fact

1. The defendant Zuckerman leased from the Western Maryland Railway Company the eastern one half of the triangular piece of land described in plaintiff's bill, being an open lot, and proposes to maintain and operate thereon a junk yard, upon which junk, scrap iron and rubbish will be from time to time dumped and stored, the quantity varying in size, dependent upon whether an embargo is placed upon the shipment of junk and the piles at times aggregating 5 feet in height and in weight 50 tons.

2. The neighborhood immediately adjacent to the

ground upon which the junk yard is proposed to be maintained is a residential neighborhood.

3. With the exception of one modern factory building and two grocery stores located in dwelling houses, the north side of Arch Street, between Queen Street and the Western Maryland Railway, and the east side of North Queen Street, between Arch Street and the Western Maryland Railway, are occupied entirely by private dwelling houses.

4. These private dwelling houses are modern dwellings, the average valuation of which is between $1,500 and $2,500.

5. There are two private dwelling houses situated and facing on Lock Alley, an alley 20 feet in width, which runs along the south side of the tract of land upon which the junk yard is proposed to be maintained.

6. The south side of Arch Street from one block east of Queen Street is occupied by private dwelling houses.

7. The owners of the dwellings on Queen and Arch streets, who are plaintiffs in the bill, have spent money on municipal improvements in the neighborhood, such as paving and joining the city sewer.

8. The neighborhood immediately adjacent to the plot of land on which the junk yard is proposed to be maintained is quiet, clean and sanitary and there is nothing in the operating of any industrial enterprise in the entire section which interferes with the comfort, welfare and safety of the neighbors.

9. The defendant Zuckerman has already dumped on this triangular piece of land two loads of junk brought from his junk yard at the corner of Fulton and East King Streets, in the City of York. This junk consists of gutter spouts, fenders, mud guards, tar buckets, tin cans, radiators, poultry wire, bed springs, baby coaches, gas tanks, signs, running boards, radiator hoods, sinks, etc.

10. Some of the automobile parts are coated with grease and some of the gasoline tanks contain gas or gas

fumes. The junk as it now exists collects stagnant water and at times gives off disagreeable odors. The junk pile as it now exists is unsightly and unsanitary and is and will be a breeding place for rats, mice, roaches and mosquitoes.

11. The junk as it now exists is detrimental to the health, comfort, welfare and safety of the neighbors and is a nuisance in fact. The junk pile, if materially increased in size, will cut off the view of the residents to the rear of their properties, will collect increased quantities of stagnant water, be a breeding place for mosquitoes, rats and other vermin and will be unsightly, unsanitary and dangerous to the health of the residents of the immediate neighborhood.

12. The junk pile, if materially increased in size, will depreciate the value of properties in the immediate neighborhood and will make said properties more difficult to rent.

13. The operation of electric shears will not straighten out the pieces of junk completely or clean them, and the pile of junk will be just as unsightly and unsanitary after cutting as before.

14. The use of electric shears will create harsh and unpleasant noises.

15. At such times as embargoes prevent the shipment of junk, the same will accumulate on the plot despite the operation of shears.

### Discussion

The rule in Pennsylvania is well established that an owner has a right, barring malice and negligence, to any use of his property, unless by its continuous use he prevents his neighbors from enjoying the use of their property to their damage. Such use may, under given conditions, be enjoined. Equitable relief must be predicated on an injurious invasion of a fixed and determined property right. By injury is meant something affecting the

capacity of the property for ordinary use or causing a discomfort in the enjoyment of it that threatens the health or welfare of the occupant, with resultant injury to the property. The damages must be of a substantial character; a mere diminution in value is not sufficient to justify a grant of equitable relief. Where, however, a party is entitled to compensation at law, if the injury, actual or threatened, be of a continuous nature and remediable only by multiplicity of suits, or where the injury is irreparable by damages at law, equity will exercise its restraining power. This is the test of equity jurisdiction.

The law has determined that some businesses are, under certain conditions, nuisances per se. A nuisance per se, as relating to private persons, is an act or use of property of a continuing nature offensive to and legally injurious to health and property, or both. A given condition may be, at all times and places, a nuisance per se. As related to business, its inherent qualities or elements must be such that it must reasonably follow, in a particular locality or surrounding, that there would be an injury to property or a discomfort to the individual, with a resulting injury to property. The difference between a business, which, no matter how it is conducted, is a nuisance per se as to certain location and surroundings, and a business which is being so conducted as to become a nuisance, lies in the proof, not in the remedy. In the former the right to relief is established by averment and proof of the mere act; in the other proof of the act and its consequences is necessary. Where it is sought to enjoin an anticipated nuisance, it must be shown (a) that the proposed construction or the use to be made of property will be a nuisance per se, (b) or that, while it may not amount to a nuisance per se, under the circumstances of the case a nuisance must necessarily result from the contemplated act or thing. The injury must be actually threatened, not merely anticipated; it must be practically certain, not merely probable. It must be further shown

that the threatened injury will be an irreparable one which cannot be compensated by damages in an action at law. A mere decrease in the value of complainant's property is not alone sufficient: Pennsylvania Co., etc., et al. v. Sun Co., 290 Pa. 404; Baker et ux. v. Moore et al., 311 Pa. 38. In Carney et al. v. Penn Oil Co., 291 Pa. 371, the Supreme Court, speaking through Mr. Justice Frazer, says: "We have frequently held that whether a particular business or other enterprise is or is not a nuisance depends upon the nature of its location and the character and result of the acts of which complaint is made, and not upon the means by which they are produced".

At the argument of the case, the defendant recognized these general legal principles but contended that the defendant should be permitted to carry on his business in the manner outlined by him, to wit, by cutting the junk into smaller pieces by means of electric shears and by speedily shipping the junk so cut, except at such times as embargoes on shipments may be in force. The difficulty that the court has with this proposition is that defendant admits that embargoes on shipments are not rare incidents but do occur with some degree of frequency, and that as a result, for a greater or less period of time, depending upon the length of embargoes, the open lot would contain a quantity of junk weighing 50 tons and being of a height of 5 feet and at all times the immediate neighborhood would be subject to harsh noises due to the constant operation of the shears. The general rule as laid down in Krocker et al. v. Westmoreland Planing Mill Co., 274 Pa. 143, is that he who sets up a nuisance at the door of his neighbors cannot be suffered to continue it under the rule of balancing equities, where the parties are numerous and the facts clearly established. In the latter case an injunction was awarded to restrain the operation of a saw and planing mill which the Supreme Court said was not a nuisance per se, but that its operation in close proximity to dwelling houses, in a residential neighbor-

hood, might cause an unreasonable infringement upon the rights of those living in the vicinity and be a nuisance in fact.

Applying the above legal principles to our findings of fact, we conclude that defendant, Bernard Zuckerman, should be restrained from operating and maintaining the junk yard and from the dumping and storage of junk of the kind and character described in the chancellor's ninth finding of fact, or of a similar kind and character, and that the defendant, Bernard Zuckerman, should be ordered to remove forthwith the pile of junk already placed on the lot in question.

## Conclusions of law

1. The maintenance and operation of the junk yard on the triangular tract of land, or any part thereof, described in plaintiff's bill is and will be a nuisance in fact prejudical to the welfare, comfort and safety of the plaintiffs and will unreasonably and unduly interfere with the use and enjoyment by the plaintiffs of the properties respectively owned by them.

2. Plaintiffs are entitled to an injunction perpetually restraining the defendant Zuckerman from operating and maintaining a junk yard by dumping or storage upon the open lot, described in plaintiffs' bill, of any junk, rubbish or scrap iron of the kind and character described in the chancellor's ninth finding of fact or of a similar kind and character.

3. Plaintiffs are entitled to an affirmative injunction, ordering the defendant Zuckerman to remove from the locality in question the pile of junk already placed thereon by him.

And now, to wit, February 18, 1935, this cause came on to be heard on bill, answer, testimony and was argued by counsel, and upon due consideration thereof, it is ordered, adjudged and decreed as follows: That Bernard Zuckerman, defendant, his agents, servants and employes,

and each of them, are hereby restrained and enjoined from operating and maintaining a junk yard upon the open lot, described in plaintiffs' bill, and from the dumping and storage of junk of the kind and character described in the chancellor's ninth finding of fact, or of a similar kind and character; and the defendant, Bernard Zuckerman, is further ordered to remove forthwith, from the locality in question, the pile of junk already placed thereon by him. The cost to be paid by the defendant. The prothonotary is hereby directed to enter this decree as a decree nisi and, unless exceptions are filed thereto within 15 days thereafter, the same shall be made absolute as of course.