## Carney et al. *v.* Penn Oil Co., Appellant.

*Injunctions—Nuisance—Public service gasoline filling station—Residential neighborhood.*

1. Whether a particular business is or is not a nuisance depends on the nature of its location and the character and results of the acts of which complaint is made, and not upon the means by which they are produced.

2. A public gasoline filling station where gasoline and oil are sold and stored, but where automobile accessories are not sold nor motor vehicles repaired, while not a nuisance per se, becomes a nuisance, where it is operated in a residential neighborhood, and produces an injurious invasion of the rights of residents, seriously affecting their health and safety, rendering habitation of their homes almost unbearable, disturbing the peace and quiet of the neighborhood and depreciating the value of near-by property, and will be restrained by injunction.

*Equity—Jurisdiction—All incidental matters considered—Final determination of case.*

3. When equity has acquired jurisdiction of a case, it may decide all matters incidentally connected with it so as to make a final determination of the entire subject.

Argued December 1, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 67, Jan. T., 1928, by defendant, from decree of C. P. Erie Co., Sept. T., 1924, awarding injunction, in case of John G. Carney et al. v. Penn Oil Co. Affirmed.

Bill for injunction to abate a nuisance. Before ARIRD, P. J. and BOUTON, P. J., specially presiding, and HIRT, J.

The opinion of the Supreme Court states the facts.

Injunction awarded. Defendant appealed.

*Error assigned,* inter alia, was decree, quoting record.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* for appellant.—Authorities do not sustain the position taken by the court below: Feldman v. Oil & Grease Co., 6 Pa. D. & C. 47; Unger v. Edgewood Garage, 287 Pa. 14; Houghton v. Kendrick, 285 Pa. 223.

Plaintiffs are entitled in this proceeding to redress only for private injuries, and not from a public nuisance: Sparhawk v. Ry., 54 Pa. 401; Reading v. Com., 11 Pa. 196; Heffner v. Com., 28 Pa. 109; Larimer v. Ry. Co., 137 Pa. 533.

*Charles A. Mertens,* with him *Miles R. Nason,* for appellee.—Where business enterprises have so far invaded a residential locality as to substantially interfere with its quiet and cleanliness it can no longer be classed as residential, but the test is as to the immediate neighborhood, and not remote districts: Mitchell v. Guaranty Corp., 283 Pa. 361; Hamilton v. Bates, 284 Pa. 513.

It is not requisite to obtain equitable relief that a business must be a nuisance per se; if the business although lawful in itself becomes a nuisance in fact by reason of its location in a residential district and the method of conducting the same, a restraining order will issue: Slingluff v. Tyson, 280 Pa. 206; Hunter v. Wood, 277 Pa. 150; Mitchell v. Guaranty Corp., 283 Pa. 361; Prendergast v. Walls, 257 Pa. 547; Hohl v. Modell, 264 Pa. 516; George v. Goodovich, 288 Pa. 48; Cricker v. Planing Mill, 274 Pa. 143.

OPINION BY MR. JUSTICE FRAZER, January 3, 1928:

The purpose of this bill was to restrain as a nuisance the operation of defendant's public service gasoline and filling station at the corner of South Park Avenue and Liberty Boulevard in the City of Erie, located on a lot owned by defendant, upon which it erected and installed elaborate apparatus for use in carrying on its business. The case was heard on bill, answer, replication and testimony. The chancellor found the controlling facts in plaintiff's favor and, from his final decree granting the relief prayed for, the appeal comes to this court.

We have frequently held that whether a particular business or other enterprise is or is not a nuisance depends upon the nature of its location and the character and results of the acts of which complaint is made, and not upon the means by which they are produced: George v. Goodovich, 288 Pa. 48, 52. In the present case, it is clear, from the chancellor's findings of facts, amply supported by testimony, that both by reason of the location of the public service station here complained of and the acts of defendant in conducting its business, there resulted an injurious invasion of the rights of complainants, which seriously endangered their health, prevented rightful enjoyment of their homes and brought about a marked depreciation of the valuation of their property. The court below found that the site of the plant is within an exclusive residential section of the City of Erie, which previous to the operation of the station was quiet and well adapted to the location of homes, that the dwellings throughout the neighborhood are of modern construction, ranging in value from $8,000 to $25,000 each, and that there are no manufactories or shops in that locality, and no business places, except a few small retail concerns, such as are usually set up in purely residential districts of a city, and that all manufactories, large business and steam railway operations, are too remote from the district in question to disturb its quietness and its attractiveness as a place for homes.

Defendant erected on its premises, which as a matter of fact abut upon the properties of several of the complainants, a plant or service station for storage of gasoline and oils for sale to the public, constructed a brick service building, sunk beneath the surface of the ground two 2,000-gallon tanks, and smaller auxiliary tanks near by, with pipes near the ground for carrying off accumulating fumes, installed other usual apparatus for storing, pumping, supplying and selling gasoline and oils, and constructed a narrow driveway on the premises, over which came and departed heavy trucks and automobiles of all sorts. The close proximity of the filling station to residences of plaintiffs is emphasized by the fact that one of these homes is less than two feet from the building on defendant's premises, that another is less than 45 feet distant, that the use of the front porch of another was practically abandoned because of serious effects of fumes and noises, and that, to use the words of the court below, the public filling station was placed virtually under the eaves of the residences; which findings are confirmed by the plan and photographs admitted in evidence, wherein the eaves, sides and windows of dwellings are shown to be within a few feet of defendant's ground and apparatus. To show the effect and extent of the injurious operation of this plant we may quote the words of the court below as follows:

"The first question naturally arises as to the effect upon the occupants of at least some of the plaintiffs' residences. We will not review all of the testimony relating to the effect, but we will consider as verity the testimony of Mr. and Mrs. Campbell, Mrs. Smith, Senator and Mrs. Nason and Mr. Carney, as to how they were affected by the operation of this gasoline station in regard to noises, vibrations, blowing horns, backing and running forward, pounding on steel, especially when changing tires, racing engines in order to remove carbon, driving heavy trucks so that they shake and even

jar some of the residences, and at times starting with a roar; lifting and dropping heavy hoods and tools and explosions of gas from the rear of machines, which sound like a cannon or giant firecracker, and these noises occur both day and night.

"Second, we will consider the testimony of the same parties relating to the effect of the odors, designated by the witnesses, from burned gas, gasoline, fumes, vapors, oil, from crank cases, sinking into the cinder driveway, smoke, dust and even monoxide gas. Taking into consideration these noises, odors, smoke, dust, etc., [they] cause many of the occupants of these houses to become sick, vomiting, nauseating headaches, even driving the people out of their homes, and in the summer time preventing them from using their front porches, and on account of the noises, etc., some of these plaintiffs, at least, are not able to sleep at night and secure their rest."

It is upon such an array of testimony, and much more, as found in the record of the case, that the court below based its findings of fact to the effect that the maintenance of defendant's public service gasoline station, in its present location, is a nuisance distinctly prejudicial to the welfare, comfort, safety and peace of the persons residing in the immediate vicinity, and to some extent, to children attending schools entering Gridley Park, and to other pedestrians passing the plant of defendant company. Our study of the record develops no ground upon which we are justified in interfering with this conclusion.

However, there remains a question, raised by the pleadings below and the assignments of error, that defendant wishes us to decide, and of which we shall here make disposition. Defendant asks, Does appellant's public gasoline filling station, as operated in this residential section, constitute a nuisance? It would seem that what we have already said in the present discussion sufficiently answers the question in the affirmative. Defendant in his brief of argument, differentiates a

public gasoline filling station from what is designated as a "public service station" connected with the motor vehicle business generally. While, it is true, none of our decisions on this line of nuisances, so far as we have been able to find, have particularized public gasoline filling stations, places at which gasoline and oils merely are stored and sold to the public, because plants of this exact sort have not figured in the cases that have heretofore come before this court, yet we think our decisions, notably Mitchell v. Guaranty Corporation, 283 Pa. 361, cited in the opinion of the court below, extend sufficiently in detail and scope to make a gasoline filling station, operated in a residential section and under circumstances similar to the one with which we are here concerned, a nuisance under the law. However, counsel for defendant, noting the citation by the chancellor of the Mitchell Case, observes that the court below overlooked, "apparently, the distinction between a public service station and a filling station." This is rather a mere juggling with words. Still, since the matter is one that the chancellor mentioned in his opinion, but distinctly declined to decide, we shall consider it here. Equity having acquired jurisdiction of a case, may decide all matters incidentally connected with it, so as to make a final determination of the entire subject: Graef v. Felix, 200 Pa. 137.

A "public service gasoline filling station," by which expression defendant here designates its plant, is, of course, a place at which gasoline, and usually oils, are stored and supplied, for a price, to the public in general, but it is no less a "public service station," as understood within the scope of the automobile business, notwithstanding tires and other accessories are not there sold nor repairs to motor vehicles made. In both kinds of "stations" the public is served; and it may happen, as it does frequently, that sales of gasoline and oils, repairs to motor vehicles and sales of accessories, are carried on in one and the same station. It is certainly not

to be disputed, if we are to be held to a strict observance of the shades of meaning of trade nomenclature in this case, that the plant in question here is a public gasoline filling station only, since its business consists in storing and supplying to the public gasoline and oils, although the chancellor did find that extraneous work was carried on, at least to the extent of changing tires on cars of patrons. Admitting, then, as we do, that the plant in question was exclusively a gasoline filling station, in contradistinction to a station where repairs to motor vehicles are habitually made and accessories sold and replaced, on the premises, was it, as such, a nuisance as operated in the residential section in question. We agree with defendant's assertion to the effect that a gasoline filling station within easy reach is as much a convenience and necessity to the drivers of automobiles as the grocery store and meat market are to the housewife: and we may add, that a like claim may be as properly made for the "public service station," where no gasoline or oil is supplied, but where tires are removed and replaced, and repairs made and accessories sold to the public. We have decided heretofore that public service stations of the latter character, operated in a residential district, constitute a nuisance and must be restrained from operation there, when afflicted citizens come into court and pray for needed relief. In the case of Slingluff v. Tyson, 280 Pa. 206, equitable relief was granted enjoining the erection and operation of a public garage and service station combined, where motor vehicles were to be sold and repairs and adjustment made. We there held with the court below that even though the service was intended to be confined to owners of the particular kind of cars offered for sale, the difference between a public garage and a service station, of the character defendant in that case proposed to operate, was in name only and that both were equally calculated to disturb neighbors in the enjoyment of the peace and quiet of their homes. In Mitchell v. Guaranty Corpo-

ration, 283 Pa. 361, we enjoined the erection and operation of a public garage and service station combined in a residential district, and there said (page 366) : "The service department, while confined to minor repairs, would daily bring automobiles to the station, certain quantities of gasoline and oils would be used and there would be noises inseparable from the business. Smoke and fumes would be generated and, although carried out of a stack twenty-four feet high, would yet be offensive to the neighbors." These are exactly the same deleterious results produced by the operation of the public service gasoline filling station in this case, and inasmuch as they were sufficient to enjoin the service station, where no gasoline or oil was served, we see no reason why they are not sufficient to put an end to the operation of defendant's station, where no repairs are made or accessories sold.

Attentive study of the facts found by the court below and the exhaustive opinion based on them, clearly discloses that in his consideration and determination of this case the chancellor kept in mind the insistence of defendant that its plant was a gasoline service station and the sole business intended to be carried on there was to store and sell gasoline and oils to the public and that as such, it comes under the designation of a "public service gasoline filling station." We may admit that popular usage may establish and trade necessities require such distinctions in designations of the various industries or enterprises connected with the motor vehicle business, but in no possible manner can the observance of this distinction be helpful to defendant in the present case. It is not the name of the plant nor the means by which it is operated out of which in this case rise the elements that constitute an actionable nuisance. To these, complainants here are not objecting. The question as to what constitutes a nuisance depends upon the nature of the acts of which complaint is made, and not the means by which produced, or the particular de-

scription applied to them (George v. Goodovich, supra) ; a public service station, differing from a garage only in name, is not a nuisance per se, but becomes a nuisance in fact when conducted in a residential neighborhood (Mitchell v. Guaranty Corporation, supra) ; so also a public service filling station is not a nuisance per se. Whether it be a nuisance depends upon its surroundings, the manner in which conducted or managed or other circumstances, and a court of equity will interfere in a proper case to restrain the operation of a drive-in filling station, though not a nuisance per se: Magnolia v. Wright, 254 Pac. 41. In the case at hand the learned chancellor found defendant's filling station, while not a nuisance per se, became a nuisance by reason of its location and the circumstances arising from its operation. Admittedly here is a plant where automobile accessories are not sold nor repairs to motor vehicles made, but where the business consists in supplying gasoline and oils to the public, at fixed prices; and the chancellor found that, in its operation, in the residential district in question, it produced an injurious invasion of the rights of claimants, seriously affecting their health and safety, rendered habitation of their homes almost unbearable, disturbed the peace and quiet of the neighborhood and depreciated the value of their property. The evidence fairly sustains these findings, and accordingly we concur in the final decree of the court below.

The decree of the court below is affirmed at appellant's costs.