PRINGLE *v.* SHEVNOCK.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—SET-BACK LINES.
   Set-back restrictions, imposed by municipal zoning ordinance enacted after nonconforming dwellings had been erected, would not have to be observed by owner of property at end of block at end of street at edge of zoned area; although, in block where there were no established buildings, conformance with the set-back lines would have to be made.

2. SAME—ZONING—SET-BACK LINES—SIDE YARDS—FRONTAGE.

Owner of vacant property in block zoned as residential area in which residences had been erected previous to municipal zoning ordinance which did not conform to the set-back lines would nevertheless have to observe the requirements as to side yards and frontage as to such vacant property.

3. SAME—ZONING—RESIDENTIAL AREAS.

Desirability of property lying on outer fringe of most highly-restricted residential zone of city for use for residential purposes is to be measured more by adjacent surroundings than by conditions obtaining in the zone as a whole.

4. SAME—ZONING ORDINANCE—REASONABLENESS.

A zoning ordinance must be reasonable and its reasonableness becomes the test of its legality.

5. SAME—ZONING ORDINANCE—PUBLIC WELFARE.

In determining validity of municipal zoning ordinance as applied to particular parcel of property, the court must consider whether the zoning of such parcel advances the public health, safety, and general welfare of the people.

6. SAME—ZONING ORDINANCE—DETERMINATION OF REASONABLENESS.

Each zoning case, as a rule, stands by itself and its reasonableness must be judged by the circumstances in each particular case.

7. SAME—TEST OF VALIDITY OF ZONING ORDINANCES.

Zoning regulations, to be valid, must be made in accordance with plan to lessen traffic congestion, to promote public health, safety and welfare and with reasonable consideration to character of the district, its peculiar suitability for particular uses, conservation of property values and general trend and character of building and population development (1 Comp. Laws 1929, § 2633).

8. SAME—ZONING ORDINANCE—RESIDENTIAL AREA—PROPERTY AD-JACENT TO TOURIST CAMP AND PUBLIC BATHING BEACH.

Zoning ordinance restricting to residence purposes the use of lots located adjacent to municipal tourist camp and public bathing beach *held*, unreasonable and confiscatory as to such lots, where it is shown as well as admitted by plaintiffs and intervening city that use of adjacent property made defendant's lots less desirable for residence property.

9. SAME—ZONING ORDINANCE—VALIDITY OF APPLICATION TO PARTICU-
LAR PROPERTY:
  In determining validity of municipal zoning ordinance as ap-
    plied to particular property near outer fringe of zone the
    validity of the ordinance as applied to other property in the
    zone is not involved (1 Comp. Laws 1929, § 2633).

10. SAME—ZONING—RESIDENTIAL AREA—BATHING BEACH—TRAILER
CAMP.
  Use for trailer camp purposes of vacant city lots at edge of zone
    wherein property was restricted to high-class residential pur-
    poses is permitted notwithstanding objection by an adjoining
    owner and city where latter maintains a larger trailer camp
    than defendant started to establish before ordinance became
    effective and public bathing beach is adjacent to all properties
    involved, since zoning ordinance, as applied to defendant's
    property, is arbitrary and unreasonable.

11. AUTOMOBILES—TRAILER CAMPS—NUISANCES—STATUTES:
  Properly-operated trailer camps are not to be classed as nui-
    sances, and are under strict regulation by State statute (Act
    No. 143, Pub. Acts 1939, as amended).

Appeal from St. Clair; George (Fred W.), J. Sub-
mitted April 12, 1944. (Docket No. 42, Calendar No.
42,684.) Decided June 5, 1944.

Bill by Otis G. Pringle and wife against John M.
Shevnock to enjoin the construction of a trailer
camp. City of Port Huron intervened as a party
plaintiff. Decree for plaintiffs. Defendant appeals.
Remanded for entry of decree dismissing bill of com-
plaint.

*William O. Covington* and *S. M. Touma,* for plain-
tiffs.

*Rudolph J. Inman,* for intervener.

*Walsh, Walsh, O'Sullivan & Schlee,* for defendant.

Boyles, J. Defendant appeals from a decree of the circuit court for St. Clair county in chancery permanently enjoining him from constructing and maintaining a trailer camp on certain premises owned by him in the city of Port Huron on the ground that the trailer camp would be a violation of the city zoning ordinance.

On June 28, 1943, the city of Port Huron adopted a zoning ordinance, effective July 17, 1943, which would prevent the defendant herein from using certain lots owned by him in the city of Port Huron, near the shore of Lake Huron, as a trailer camp. The defendant had started to erect a service building and to construct a trailer camp on these lots. He claimed the ordinance was arbitrary, unreasonable and void as to his lots and declined to discontinue his plans. On July 24, 1943, plaintiffs, Otis G. Pringle and wife, owners of property adjacent to defendant's proposed trailer camp, filed a bill of complaint in the circuit court for St. Clair county in chancery to restrain defendant from constructing or maintaining a trailer camp on his said lots. A temporary injunction was issued. The city attorney filed a petition and obtained leave to intervene as party plaintiff on behalf of the city of Port Huron. Issue was joined, proofs taken in open court, and a decree was entered permanently enjoining the defendant from constructing or maintaining a service building or a trailer camp on the premises in question. On appeal defendant asks for a decree dismissing the bill of complaint.

Defendant claims (1) that the zoning ordinance is void because the city commission failed to give notice and hold a public hearing before its adoption; (2) that he had obtained a vested right to complete the construction of a trailer camp prior to the effective date of the ordinance; and (3) that the ordinance is

arbitrary, capricious and unreasonable in forbidding defendant's use of his property as a trailer camp, in view of its surroundings.

The locus and surroundings of the property owned by the parties are shown on the following drawing:

The respective properties of these parties front on Conger street, facing Lake Huron. They each have substantial residences on their property which they occupy as their homes. Plaintiffs acquired their property in 1935, defendant purchased his in 1939. The defendant's property consists of lots 5, 6, 7, 8, 9,

10, 11, 12, 13 and 15, block 5, subdivision of outlot 17, McNeil tract in the city of Port Huron. These lots all have a frontage of 25 feet and a depth of 100 feet. Lots 6, 8, 10 and 12 front on Conger street, and lots 5, 7, 9, 11, 13 and 15 front on Omar street. Lots 5 and 6 are abutted on the south by the so-called Lighthouse Reserve upon which the city of Port Huron operates a trailer camp. Lots 6, 8, 10 and 12 are abutted on the east by Conger street and immediately to the east of Conger street is a public bathing beach operated by the city of Port Huron and located on Lake Huron. The public bathing beach extends from the city trailer camp, on the south, north for approximately a city block to Lakeview avenue. Conger street along this block is a cinder drive which ends 50 feet north of the north line of the city trailer camp. The city trailer camp is used for house trailers, tents, and also contains tourist cabins, a service building, kitchen, laundry and caretaker's building. At the time of the trial of this case there were about 45 trailers in the city trailer camp. Prior to gas rationing the camp had at times as many as 125 trailers in it. This trailer camp is operated by the city from about the 1st of June until Labor Day. It had been established prior to the time the parties hereto acquired their respective properties in block 5.

The public bathing beach along Conger street and in front of block 5 was put into use as such in the summer of 1939 at about the same time that the defendant acquired his property. During the summer months the bathing beach is used in varying numbers, from approximately 25 to upwards of 300, depending upon the weather and the holidays. The bathers park their cars in front of the houses along Conger street and at times park their cars in front of the defendant's premises, sometimes using their

automobiles for dressing rooms. On a Sunday after-
noon there have been parked at the foot of Lakeview
avenue and along Conger street as many as 50 cars.
The city has a "Stop" sign at the end of Conger
street 50 feet north of the trailer camp, and at this
place the cinder drive widens out and forms a turn-
ing basin for the beach traffic, using the property in
front of defendant's house.

Plaintiffs Pringle and wife own lots 17 and 18 and
the south half of lots 19 and 20, block 5, subdivision
of outlot 17, McNeil tract, adjoining defendant's
property on the north, and extending through from
Conger street on the east to Omar street on the west,
and having a frontage of 37½ feet on each street.
Between the plaintiffs' home and the defendant's
home there is a summer cottage. The defendant's
home is located on Conger street, on the north side
of his property, the south side of his house being
65 feet northerly from the north line of the city
trailer camp.

Defendant's proposed trailer camp would occupy
the southerly 55 feet of defendant's property on
Conger street adjacent to the city trailer camp, and
would occupy all of his rear lots fronting on Omar
street. It would be an "L" shaped piece of property
around the defendant's residence and would abut
the westerly or rear part of plaintiffs' property.
Along its entire southerly side of 200 feet, it would
be abutted by the city trailer camp. It would ac-
commodate 18 trailers if fully occupied. The city
trailer camp is entirely within the view of defend-
ant's premises, there being a fence of single strand
wires strung on wooden posts.

The premises upon which defendant proposes to
place his trailer camp are restricted by the Port
Huron zoning ordinance as residential district of
the highest class. For residential purposes the ordi-

nance would permit only the erection of single-family, two-family, group and multiple-family residences, and would not permit its use as a trailer camp. Every dwelling would have to be erected on a lot with not less than 5,000 square feet, with a frontage of not less than 50 feet, and with a front yard of not less than 25 feet. As to the lots in block 5 fronting on Conger street, because the dwellings already located there are nonconforming, the use of defendant's southerly lots would not have to observe the set-back line of 25 feet. However, he would have to observe the requirements as to side yards and frontage as to the vacant lots. As to his lots totaling 150 feet of frontage on Omar street, because there are no established buildings on that side of Omar street within block 5, the defendant's lots would have to be used in conformity with the restrictions of the zoning ordinance.

In April, 1943, the defendant decided to devote his vacant property to use as a trailer camp. He consulted the city engineer and an employee of the city engineer's office prepared the necessary sketches in his off time. Defendant was, however, informed by the city engineer that if the zoning ordinance was adopted in its present form a trailer camp would not be permitted on his property unless it was constructed before the ordinance went into effect. Various delays were encountered by the defendant throughout this period. In connection with application to the State health department for a permit to construct a trailer camp, the city clerk, on May 26, 1943, certified that there was no local ordinance prohibiting the establishment of a trailer-coach park on the location in question. On July 8th, the defendant went to Detroit to the War Production Board and on Saturday, July 10th, he received his priority number. On Monday morning,

July 12th, the defendant went to the city manager for the purpose of obtaining a building permit and was told to come back the next morning, July 13th, and finally, at 3 o'clock in the afternoon of that day, after the city manager had conferred with the city attorney and the city clerk, a building permit was issued to him for the construction of his service building on the trailer camp. On or about July 7, 1943, the defendant had a discussion with the city manager who told him that the zoning ordinance would be effective on July 17th. The defendant obtained blueprints, paid for leveling the ground, and upon receiving his building permit lumber costing $90.06 and crock pipe and fittings for sewer at the trailer camp, costing $69.86, were delivered to the premises. On Monday, July 19th, the defendant proceeded to build the forms necessary to pour concrete for the foundation of the service building, and purchased ready-mixed concrete which was poured into the forms. This work was completed on Saturday, July 24, 1943, and on that day the injunction, issued in this case, was served upon the defendant and the work ceased.

Defendant claims that the zoning ordinance is arbitrary and unreasonable as applied to his particular property. The ordinance covers the entire city, and district R-1 is designated as the most highly restricted residential zone. This zone comprises a considerable portion of the property within the city and there is no question but that, as a whole, it covers residential property most desirable for residential purposes. The defendant does not dispute plaintiffs' claim that this district as a whole is one of the most desirable districts in the city for residential purposes. However, defendant's property lies on the outer fringe of this district and its desirability for residential purposes is to be

measured more by its adjacent surroundings than by conditions obtaining in zone R-1 as a whole. Defendant's contention that the ordinance is arbitrary and unreasonable in its application to his property is partly substantiated by admissions of plaintiffs and the city authorities. Mr. Kiefer, a member of the city planning commission since it was first constituted, testified that the commission did not consider defendant's property individually, or as to its peculiar situation, and admitted that a piece of property abutting a tourist trailer camp is, generally speaking, not a proper, high-class piece of residential property. Plaintiff Otis G. Pringle admitted that defendant's property which abuts a trailer camp that has some 45 to 100 trailers in it would hardly be usable for high-class residence purposes. The evidence shows that the defendant's vacant property is not suitable for use solely for high-class residential purposes. This was substantially admitted by both the plaintiff and the chairman of the city planning commission.

The statute (1 Comp. Laws 1929, § 2633 [Stat. Ann. § 5.2931]) authorizing municipalities to pass zoning ordinances provides:

"Such regulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development."

A zoning ordinance must be reasonable and its reasonableness becomes the test of its legality. Each zoning case must be determined upon its own facts and circumstances. *City of North Muskegon* v.

*Miller,* 249 Mich. 52; *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31. In the latter case the court said:

"It is necessary that a zoning ordinance be reasonable and its reasonableness becomes the test of its legality. *City of North Muskegon* v. *Miller,* 249 Mich. 52. To classify this property for single residential purposes seems to us to work too great a hardship on the plaintiff and serves no useful purpose for the general welfare of the community. The parcel itself would be well adapted for residential use, being high, dry, level and sandy, with almost every modern convenience already established, were it not for its location. In the last analysis we must consider whether the zoning of this particular triangle advances the public health, safety and general welfare of the people. That is the general purpose of a zoning law and uniformity for this purpose is encouraged. Each zoning case, as a rule, stands by itself and its reasonableness must be judged by the circumstances in each particular case. *Moreland* v. *Armstrong,* 297 Mich. 32."

In *City of Pleasant Ridge* v. *Cooper,* 267 Mich. 603, the city of Pleasant Ridge zoned for residential purposes property located at the southwest corner of Woodward avenue and Ten Mile road in the city of Pleasant Ridge. It had a frontage of 312 feet on Ten Mile road and 125 feet on Woodward avenue. 712 feet west of the property in question was located the Detroit Zoological Park which was shown to have been visited during the summer on Sundays and holidays by many thousands of people. The three corners at the intersection opposite to the property in question were used for business purposes, as was the north side of Ten Mile road opposite the property in question. This court (syllabi) held:

"Zoning regulations, to be valid, must be made in accordance with plan to lessen traffic congestion, to promote public health, safety and welfare and with reasonable consideration to character of the district, its peculiar suitability for particular uses, conservation of property values and general trend and character of building and population development (1 Comp. Laws 1929, § 2633).

"Zoning ordinance restricting use of lot to residence purposes *held,* unreasonable and confiscatory where lot was on boundary of village, on corner of two busy thoroughfares with opposite sides devoted strictly to commercial purposes and nearby zoo attracts large crowds on Sundays and holidays making place less desirable for high-class residential purposes."

In New York, the appellate court in deciding a case somewhat similar to the instant situation as to facts, said:

"Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced. In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights." *Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 231 (177 N. E. 427, 86 A. L. R. 642).

In *Senefsky* v. *City of Huntington Woods,* 307 Mich. 728, this court held the following statement from *Brookdale Homes, Inc.,* v. *Johnson* (syllabus), 123 N. J. Law, 602 (10 Atl. [2d] 477), to be an accurate statement of the law:

"While the legislature has given municipalities the right to pass ordinances to regulate and restrict

the height, number of stories and sizes of building, such ordinances to be valid must be designed to promote public health, safety, and general welfare, and do not carry with them the right arbitrarily or capriciously to deprive a person of the legitimate use of his property."

We are not called upon to decide whether the zoning ordinance now under consideration is arbitrary or unreasonable as applied to other property in zone R–1. The issue here is limited to the application of the ordinance to the property of this defendant. As was said in *City of Pleasant Ridge* v. *Cooper, supra,* at page 605:

"The appeal presents the sole question as to whether the ordinance, as it affects the use of appellant's property, is a constitutional, reasonable and nonconfiscatory exercise of police power under the provisions of the zoning statute. Our consideration of the ordinance in question is limited solely to its validity as applied to the particular property involved on this appeal."

In this case the defendant seeks to use his vacant lots for the very same purpose adopted by the municipality for its use of adjacent city-owned property. The city attempts by ordinance to prevent the defendant from using his property as a trailer camp, while at the same time the city continues to maintain a larger trailer camp on its adjacent unzoned property. In *Catholic Bishop of Chicago* v. *Kingery,* 371 Ill. 257 (20 N. E. [2d] 583), a zoning ordinance expressly permitted a public school to be maintained in a residential section but prohibited the existence of a private or parochial school in the same section. The court said:

"The ordinance before us bears no substantial relationship to the promotion of the public health,

safety, morals, or welfare. Such legislation amounts, in fact, to a capricious invasion of the property rights of the appellee, and as such cannot be sustained."

In view of the facts adduced, and the use made of unzoned property adjoining defendant's lots, we must conclude that the ordinance is arbitrary and unreasonable in restricting the use of defendant's property solely to high-class residential purposes. Properly-operated trailer camps are not to be classed as nuisances, and are under strict regulation by State statute. Act No. 143, Pub. Acts 1939, as amended (Comp. Laws Supp. 1940, 1943, § 1098-21 *et seq.*, Stat. Ann. 1943 Cum. Supp. § 5.278 [1] *et seq.*). In view of our conclusion, it is not necessary to pass upon the other questions raised by appellant.

The case is remanded for entry of a decree dismissing the bill of complaint, with costs to appellant.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.