Bortz et al., Appellants, *v.* Troth et al.

Argued March 22, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Joseph W. Ray, Jr.*, with him *Joseph E. Kovach, Jacob E. Horewitz, Robert B. Stauft* and *Buell B. Whitehill*, for appellants.

*J. K. Spurgeon*, with him *John L. Spurgeon* and *Spurgeon & Spurgeon*, for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 24, 1948:

This is a bill in equity by numerous property owners, appellants, to enjoin erection and operation by appellees of a gasoline filling and service station in an allegedly exclusively residential district of Uniontown, Fayette County. The chancellor granted a preliminary injunction and after an extended hearing concluded that the site was in an exclusively residential area and awarded a permanent injunction. This appeal is from the decree

of the court *en banc*, the chancellor dissenting, sustaining appellee's exceptions to findings of fact and conclusions of law, holding the area to be not exclusively residential but in the process of transition, dissolving the injunction and dismissing the bill.

Edward S. Troth, Herbert R. Edwards, and Howard J. Mulligan, appellees, purchased property situate at the northeast corner of North Mount Vernon Avenue and West Main Street in the City of Uniontown, Fayette County, 136 feet front on North Mount Vernon Avenue and 341.3 feet front on West Main Street. They advised certain of appellants of their intention to erect and operate thereon a public drive-in gasoline filling and service station 70 feet 9 inches long, 31 feet wide and 15 feet high, to be built of concrete blocks with stucco and porcelain finish. Six gasoline and diesel fuel tanks having a capacity of 2000 gallons each were to be installed underground and six electric pumps on three separate islands to be used for drawing off the gasoline. Entrances and exits were to be 35 feet wide, two on North Mount Vernon Avenue and two on West Main Street.

At the hearing before the chancellor, appellants adduced the following testimony: The site of the proposed gasoline and filling service station to be erected by appellees is the corner of North Mount Vernon Avenue and West Main Street in the City of Uniontown. Main Street is a part of U. S. Route No. 40. The entire district west of North Mount Vernon Avenue extending west four blocks to Oakland Avenue and north of West Main Street, extending three blocks to Gilmore Street, is exclusively residential and composed of single family dwellings with the following exceptions: St. Mary's Catholic Church and rectory in the third block to the north, and several homes which have in recent years been divided into apartments. There are in this district no hotels, stores, public garages, filling stations, or other commercial structures; it has never been encroached upon by any business enterprise.

The district west of South Mount Vernon Avenue and south of West Main Street for two blocks in both directions is primarily residential although it contains a public elementary school, a neighborhood grocery store, and a gasoline filling station which was erected about five years ago 600 feet west of South Mount Vernon Avenue.

The east side of Mount Vernon Avenue, one block north and two blocks south of West Main Street, is composed primarily of single family dwellings with the following exceptions: a three-story brick apartment building fronting on West Main Street on the east side of North Mount Vernon Avenue with storerooms on the first floor, fronting on Main Street. An electric trolley is operated on the center of North and South Mount Vernon Avenue. At the corner of East Mount Vernon Avenue and Fayette Street there is a drug store which has been in operation for a number of years.

North Fayette Street intersects with West Main Street and Mount Vernon Avenue, forming a five street intersection which is controlled by a traffic light. A single track of the Monongahela Railroad Company crosses both Main and Fayette Streets, 150 feet east of the intersection. The district east of Mount Vernon Avenue is predominantly commercial. Proceeding west on Main Street from the intersection there is a rise of 7 or 8 per cent for a distance of more than 300 feet. The intersection is dangerous and has been the scene of numerous accidents. Traffic count on West Main Street is as high as 1200 cars per hour. It is estimated that more than 160 vehicles will drive in and out of the proposed station per day. At least one-third of the children attending St. Mary's School, and a large proportion of those attending the public elementary school south of West Main Street, must cross at the intersection of Main Street and Mount Vernon Avenue.

Several residents and a real estate broker testified that the value of the properties would decrease if appellees were permitted to build and operate.

From the foregoing evidence the chancellor found that: "A gasoline filling and service station erected and operated on the property of the defendants as proposed by them would necessarily produce noises, fumes, gases, smells, dust, lights, and dangers seriously affecting the health, safety, and welfare of persons residing in the vicinity; it would interfere with their rest and sleep, would render habitation of their homes less comfortable and enjoyable, would substantially depreciate the value of their properties, and in addition would create increased traffic congestion menacing the bodily security of school children and other pedestrians passing the station on West Main Street and North Mt. Vernon Avenue and of those crossing the intersection."

He found as a conclusion of law that: "The district west of North Mt. Vernon Avenue and north of West Main Street, extending four blocks west from North Mt. Vernon Avenue and three blocks north from West Main Street, is exclusively residential."

The court *en banc* set aside the material finding that the area was exclusively residential, relying upon the evidence that there is a gasoline filling and service station at the intersection of West Fayette Street and West Main Street and another at the southeast corner of Kensington Street; that east of Mount Vernon Avenue on the north side of Main Street is the K-V Building occupied on the first floor by a tailor shop, shoe repair shop, confectionery store, and a beer garden, with nine apartments above, and adjoins a railroad right of way; that to the east the district is predominantly commercial and contains gasoline stations, garages, parking lots, a large feed store, and other business enterprises; that there are street cars operating regularly on Mount Vernon Avenue; that vehicular traffic east and west on Main Street is heavy; and, that on the southwest side of the five street intersection is the Haky Funeral Home. It concluded that there was doubt whether the value of surrounding properties would depreciate by reason of the

erection and operation of the proposed service station; that "Dust, dirt, noise, smoke, lights, odors and fumes from the nearby garages and public gasoline filling service stations reach and permeate the residences on both sides of Mt. Vernon Avenue for one block north and south of the intersection"; that the quiet and cleanliness of the residential properties has already been substantially interfered with; that the district is "in a transitory stage and slowly becoming commercialized"; and, that the proposed station could be operated without materially or substantially increasing existing dangers to health and safety. It stated as a matter of law that: "The district in question can no longer be classified as a predominantly residential district because its business enterprises have so far invaded the district as to substantially interfere with its quiet and cleanliness"; that "The operation of a public drive-in, gasoline filling and service station on the proposed site will not constitute a nuisance in fact"; and, dissolved the injunction and dismissed the bill. This appeal followed.

The pivotal issue is whether from this record the pertinent portion of Gilmore Addition can properly be said to be in a state of transition and no longer exclusively residential. If it has lost its strictly residential character, then a gasoline filling and service station cannot be determined a nuisance *per se* and its operation can only be enjoined if a nuisance in fact determined by the manner in which it is operated and the serious results to the immediate neighborhood.

The character of the use of property in a particular neighborhood is not the sole and decisive test of the right to operate a given business therein: *White v. Country Club*, 322 Pa. 147, 151, 185 A. 316. Consideration must be given to the nature, type, and proximity of dwellings, the effect of property values, increased hazards and dangers to life and limb, and any other circumstance which tends to establish the type of neighborhood into which a business is sought to be introduced. If from all

circumstances it clearly appears that the neighborhood has been and remains exclusively residential, cases determining a service or filling station to be a nuisance *per se* control and the court *en banc* erred in dissolving the injunction and dismissing the bill: *Thomas v. Dougherty*, 325 Pa. 525, 190 A. 886; *Nesbit v. Riesenman*, 298 Pa. 475, 148 A. 695; *Mitchell v. Guaranty Corporation*, 283 Pa. 361, 366, 129 A. 114.

Where, as here, the findings of a chancellor are set aside by the court *en banc*, with the chancellor dissenting therefrom, it is the duty of an appellate court to examine the entire record and determine whether such action is justified: *Pilling v. Moore*, 306 Pa. 406, 410, 160 A. 109. Great weight will be given to the findings of a chancellor (*Belmont Laboratories, Inc., v. Heist*, 300 Pa. 542, 547, 151 A. 15) for they may properly be disregarded only in clear cases. This Court is in a position similar to that of the majority of the court *en banc* which reversed the chancellor. See *Rutter v. Rutter*, 292 Pa. 343, 346, 141 A. 146.

The reasons given by the court *en banc* for reversing the chancellor are that many material factors were ignored: the neighborhood is no longer exclusively residential, buses, trucks, street cars, and the railroad have long disturbed the peace and quiet to be found in a strictly residential district and subjected it to discomforting and disagreeable noises; that directly across North Mount Vernon Avenue, but fronting on the north side of Main Street, is located a beer garden, tailor shop, shoe repair shop, and confectionery store, and the eastern end of said building abuts the right of way of a steam railroad; that diagonally across from the proposed station on the southeast corner of the intersection is a first floor drug store and soda fountain; that east therefrom are located admittedly business properties; that the business district has continued to expand westerly; that within the past five years a gasoline filling and service station has been built on the south side of West Main

Street, one block west of the property here involved and on the opposite side, which station is directly across from residential properties which the chancellor found were within the strictly residential sections; that a building permit had been issued for the erection of the proposed station; and, that sections too remote from the section involved were considered and not the immediate neighborhood.

The record establishes that Gilmore Addition, and, in particular, the immediate neighborhood with which we are primarily concerned (*Unger v. Edgewood Garage*, 287 Pa. 14, 18, 134 A. 394; *Calvary Church v. Jones*, 322 Pa. 77, 80, 185 A. 267) is not in a transitional stage. There is no evidence that there has been any invasion of this exclusively residential district by commercial interests. There has been no change as regards its exclusive residential nature. Commercial interests and the railroad referred to by the court *en banc* have been in the district for many years. Nevertheless, Gilmore Addition remained exclusively residential. The record conclusively establishes that the portion of the K-V Building wherein are located the several stores has been for many years "the line, the business line, between the business and residential district". That no commercial enterprise has, prior to appellees' venture, undertaken to come into the neighborhood east of West Main Street and north of Mount Vernon Avenue is of itself strong evidence of its true character.

There is no evidence to support a finding that increased vehicular traffic over West Main Street and continual operation of the aforementioned commercial interests have so disturbed the peace and quiet of the neighborhood that operation of the proposed station would not change the character in that regard. Imposition of the annoyances and dangers attendant upon construction and operation of the station (*Mitchell v. Guaranty Corporation*, supra, 366) cannot be justified by asserting a possible previous annoyance. Particularly is

this true, where, as here, the neighborhood continued in fact exclusively residential throughout the entire period of the asserted prior annoyance. There is credible testimony to support the chancellor's finding that real estate values would be decreased immediately as a result of the intrusion of a gasoline station.

What appellee in effect suggests, and what the court *en banc* has done, is to declare a neighborhood to be in a transitional stage because not far away there are commercial enterprises, the operation of which would be prevented in an exclusively residential district. To establish that principle as one of law will negative the existence of lines of demarcation dividing commercial, residential and exclusively residential districts. Commercial areas would be moved forward without restraint, except that equitable relief might be afforded if the given business were shown to constitute a nuisance in fact. Fringe areas would advance so that block after block would steadily succumb to inroads of industrial enterprises. The learned chancellor aptly said: ". . . the mere fact that there are gasoline stations and other sources of discomfort outside the district not far from its eastern boundary cannot entitle (appellees) to violate the boundary and add to the discomfort from within."

The error of the majority of the court *en banc* was overemphasis upon the proximity of existing business enterprises and failure to recognize the fact that no inroads had been within the area in question which has remained exclusively residential. Boundaries there must be, which divide commercial from residential and residential from exclusively residential. Exclusively residential districts are not to be denied the benefit of principles of law and equity appertaining thereto because bordered by or proximate to districts termed commercial. The site of the proposed gasoline filling and service station is in an exclusively residential district not in a transitional stage. It is well settled that operation

thereof in such circumstances constitutes a nuisance *per se*, notwithstanding absence of a zoning ordinance or the efforts of appellees to minimize its offensiveness: *Pennell v. Kennedy*, 338 Pa. 285, 288, 12 A. 2d 54.

The decree of the court below is reversed; the bill in equity is reinstated and the decree *nisi* made absolute; costs to be paid by the respective parties.