## Menger *v.* Pass, Appellant.

Argued November 17, 1950; reargued March 26, 1951. Before DREW, C. J., STERN, STEARNE, JONES BELL, LADNER and CHIDSEY, JJ.

*Stanley G. Stroup,* with him *Joseph Nissley* and *Livengood & Nissley,* for appellants.

*Mark T. Milnor,* with him *Shelley & Reynolds,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 21, 1951:

The court below ruled that the erection and maintenance of an automobile tourist court—also known as a motel, automobile inn or camp—in a strictly residential area—which was unzoned and unrestricted—constituted a nuisance *per se* which was thereupon restrained. This appeal followed.

Charles M. Pass and Mary B., his wife, appellants, purchased on November 19, 1949, for $20,000, vacant land situate at the northeast corner of Front and Vaughn Streets in the City of Harrisburg. The premises extend northward along Front Street from Vaughn Street to the northern city line. There was no zoning ordinance or building restrictions prohibiting automobile courts. On August 10, 1950, a building permit was issued for the erection of the structure in question. The proposed structure is described by the chancellor as a: ". . . one-story construction . . . to contain manager's apartment, office, twenty-five bedrooms, bathrooms, heating plant, auxiliary rooms, and an open area in front for the parking of twenty-five automobiles." Also: "[It] is a one story brick building with picture windows, and for a tourist court is of attractive design. No liquor, beer, soft drinks or food is to

be sold there. During the early evening a neon sign will be lighted to attract customers. . . . It will be so constructed that large trucks cannot enter the parking space."

Front Street, in the City of Harrisburg, upon which the land fronts, is a multi-lane highway located along the Susquehanna River. No buildings are erected between it and the river. It is part of Pennsylvania Highway Route No. 22 and is heavily traveled with an official traffic count of approximately 13,600 vehicles per diem, many of which are heavy trucks. For a distance of six tenths of a mile north and nine tenths of a mile south of Vaughn Street, on Front Street, with the exception of one tourist home and a Naval Training Center, the entire area consists of single family dwellings and vacant lots. In the adjoining Susquehanna Township to the north, there is vacant land for a distance of 1000 feet except for one dwelling. The encroachment of commercial properties along Front Street has changed its former character and appearance. But even in the residential section east of Front Street are found a drug store, funeral home, schools, churches, neighborhood store or two, and one or two small commercial establishments. Further away, but in the general area, are found a cleaning establishment, gasoline station, plumber's office, junk yard, etc., and "[further] up Front Street . . . hamburger joints, gasoline stations, clubs, motor equipment etc."

While we have grave doubt whether the evidence supports the finding that this land is in a strictly or predominantly residential neighborhood, *for the present purposes,* we will regard the court's finding, to this effect, as properly supported. When owners of real estate in a residential area desire to preserve their neighborhood in an unchanged condition, they must secure appropriate zoning ordinances or be protected by building restrictions. In the absence of zoning

ordinances or restrictions any citizen may purchase real estate in the area and use it *for any lawful purpose*. This is his constitutional right. However, in so using the premises he must not create a *nuisance*, which affects health, safety or morals. In judicially determining whether a nuisance exists, many uses, by their very natures, incontrovertibly constitute nuisances in a residential district which will be so decreed as *matter of law*. The existence of other nuisances must be established by testimony as in other cases. This Court said in *Essick et al. v. Shillam, Aplnt., et al.,* 347 Pa. 373, 32 A. 2d 416, p. 377: "Because certain types of business, by the necessary incidents of their normal operation, deleteriously affect the health and comfort of the community, their establishment in residential districts has been held to constitute a nuisance as a matter of law. Public garages (Ladner v. Siegel, supra; Phillips et al. v. Donaldson, 269 Pa. 244), automobile service and filling stations (Carney et al. v. Penn Oil Co., 291 Pa. 371; Sprout v. Levinson et al., 298 Pa. 400.; Long et al. v. Firestone T. & R. Co. et al., 303 Pa. 208; Perrin's Appeal, 305 Pa. 42; Thomas et al. v. Dougherty et al., 325 Pa. 525; Pennell et al. v. Kennedy et ux., 338 Pa. 285; Calvary Church v. Jones, and Burke v. Hollinger, both supra) are the most common illustrations of enterprises in this category. Others may be found listed in Pennsylvania Co., etc., v. Sun Co., supra, at page 411 [290 Pa. 404]." Among such listed nuisances *per se* are included fertilizer plants, livery stables, stock yards, amusement parks and saw mills.

The court below ruled *as matter of law* that a tourist court or inn, so located, is a nuisance *per se*. The reasons assigned for declaring such proposed structure and its operation to be a nuisance *per se* is stated in the adjudication: "Can a tourist court be operated in such an area so as not to be a nuisance? We think not. The purpose of the tourist court is to rent rooms by

the night to transients. There will be a parking place for approximately 25 cars. Nearly that number are likely to be there almost every night of the year. Some guests will come in the late afternoon, leave again for dinner and come back. Some will arrive in the early evening, but some undoubtedly will arrive later. The lights to attract them will be on until 11:30. If there are vacancies in the court, motorists will be received later. Some of those who stop are bound to leave early in the morning, some later. Car doors will bang, not only to permit passengers to leave and enter the vehicle, but also to remove the luggage, and often again for the forgotten package. Trunks too will bang. And a certain amount of loud talk during the unloading—the 'don't forget' variety of calls from the cabin door to the parked car—is inevitable."

Such assigned reason respecting the operation of a *proposed* automobile court or inn is obviously anticipatory, conjectural and the *opinion* of the chancellor. Such suggested or predicted results are neither inevitable nor likely. Upon the contrary, it is to the obvious business interest of experienced operators of automobile courts or inns to provide and preserve quiet and order. Tourists who seek a night's rest will avoid noisy and ill-conducted establishments. Should, however, such legal business be improperly conducted and became a nuisance *in fact,* its operation can be restrained.

It is a matter of judicial knowledge that the advent and extensive development of automobile travel in the United States has tremendously changed and affected the habits of automobile travelers. It necessitated the building and maintaining of arterial super and multilane highways which have interlaced the entire country. Large cities, and even smaller ones, are now being by-passed by motorists in order to avoid the delay and

congestion of city traffic. In consequence there have been erected and developed, in large numbers, along the highways, automobile tourist courts, inns, camps or motels to accommodate such transient automobile travelers. No longer are motorists required to enter a city in order to secure hotel accommodations. In many instances automobile courts, inns, camps and motels provide equal, if not superior, accommodations than are supplied by many first-class urban hotels. Certainly they constitute a tremendous convenience to automobile travelers.

There is no sound reason to declare that an automobile tourist court, inn or motel is a nuisance *as matter of law*. While there are apparently no appellate cases in Pennsylvania so deciding, in 66 C. J. S. sec. 75, p. 825, it is stated: *"Tourist and trailer camps. An automobile tourist camp is not a nuisance as a matter of law, and it will not be presumed that such camp will be so conducted as to constitute a nuisance."*

Cases from Arkansas, Texas and Michigan, are cited in support of the text: *Moore v. Adams,* 200 Ark. 810, 141 S. W. 2d 46; *Iford v. Nickel,* 1 S. W. 2d 751 (Texas); *Pringle v. Shernock,* 309 Mich. 179, 14 N. W. 2d 827; *Richards v. City of Pontiac,* 305 Mich. 666, 9 N. W. 2d 885.

We, therefore, hold that an Automobile Tourist Court or Inn is not a nuisance *per se,* even in a strictly residential area which is unrestricted and unzoned. Such owners possess a constitutional right to use their land for any lawful purpose. In the absence of proof of the maintenance of a nuisance *in fact,* such use will not be restrained.

The decree is reversed and the bill dismissed at the cost of appellees.

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

I cannot agree with the opinion and order of the majority of this Court that a tourist court in a strictly residential neighborhood is not a nuisance *per se.* There is inherent in the opinion a failure to give full effect to the findings of the chancellor, approved by the court *en banc,* and a serious challenge to the salutary holding of this Court in *Bortz v. Troth,* 359 Pa. 326, 59 A. 2d 93.

Appellants, on November 19, 1949, purchased three lots at the corner of Front and Vaughn Streets in the City of Harrisburg for the purpose of erecting a modern tourist court or inn. On March 2, 1950, a building permit was requested from the bureau of building inspection. Written application therefor was made on May 9, 1950. Property owners in the immediate neighborhood, appellees, on March 13, 1950, filed their bill of complaint in equity averring, *inter alia,* that the area in which the tourist court is proposed to be erected is exclusively residential in character, that the City of Harrisburg had authorized a zoning commission to prepare a zoning ordinance which, if adopted, would forbid erection of the proposed tourist court, that construction of the court would cause irreparable damage to appellees, that a tourist court in a strictly residential neighborhood is a nuisance *per se,* and prayed that an injunction be issued temporarily pending hearing and permanently thereafter enjoining the erection of the proposed motor court. A rule to show cause why a preliminary injunction should not be granted was entered.

Appellants, on March 17, 1950, filed their answer to the bill of complaint admitting purchase and ownership of the land in question and application for a building permit to authorize erection of a motor court on said land, but denying that the construction there-

of would cause irreparable damage to appellees, that the locality was strictly residential in character, and the proposed construction would constitute a nuisance in fact or *per se.*

The chancellor, after three days of hearing, made the following findings of fact: The property in question is vacant land, consisting of lots 1, 2 and 3 on the plan of Vaughn Terrace. The lots are situate on the northeast corner of Front and Vaughn Streets in the City of Harrisburg, and extend from Vaughn Street to the northern city line and were purchased by appellants on November 19, 1949, for $20,000. No building restrictions, reservations, exceptions or conditions exist in the title, other than that no building for human habitation should be erected within 15 feet of the street or less than 15 feet wide, unless it faces a wider street. There is no zoning ordinance operative[1] within the City of Harrisburg. There is a zoning ordinance in Susquehanna Township, which is contiguous to and adjoins the premises on the northerly side. No new residences have been erected on Front Street within several blocks of the lots in question during the last 12 to 15 years. Front Street, upon which appellants' lots abut, has a continuous heavy traffic rate at an established count of approximately 13,600 vehicles per day, many of which are heavy trucks. Operation of the proposed tourist court will be on a 24 hour, 7 day per week, 52 weeks per year, and 365 days per year basis for daily transients only, and will be operated as sleeping quarters. No gasoline, oil, soft drinks, soda

---

[1] A zoning ordinance in course of preparation at the time of the chancellor's finding was subsequently passed in October of 1950 restricting the area which includes the lots here involved to single family detached dwellings, churches, schools, libraries, government buildings and parks.

water, food or accessories will be sold on or about the premises. A neon sign and bright illumination of the court will be in operation until approximately 11:30 p.m., after which safety lighting only will be maintained. All illumination will be designed to confine itself to the premises. Trucks and truckers will not be accommodated.

Front Street in the City of Harrisburg and north thereof is a multi-lane highway along the Susquehanna River. No buildings are erected between it and the river. Approximately four-tenths of a mile south of Vaughn Street is the former Harrisburg Academy site, now used by the Navy Reserve Corps Units. On the northwest corner of Second and Lewis Streets, a block east and a block south of Front and Vaughn Streets, is a neighborhood drug store. On Front Street, a block and a half south of Vaughn Street, is a dwelling used as a tourist home. With the exception of the above, there are no churches, schools or commercial establishments of any kind on Front or Second Streets for a distance of six-tenths of a mile north of Vaughn and nine-tenths of a mile south of Vaughn Street. All dwellings on Front Street are single family dwellings and on Second Street, are both one and two-family dwellings.

The Supervisors of Susquehanna Township have adopted a zoning ordinance, pursuant to which the two blocks immediately north of the City, the Bergner Farm and Montrose Park, are classified as R-1 Residential, i.e., one-family residence to a lot. *With the exception of appellants' property and the former Harrisburg Academy property, the entire area along Front Street from Division Street on the south to Estherton on the north, being in Harrisburg and Susquehanna Township respectively, is restricted for residence purposes only.* Vaughn Terrace and all lots fronting on

Vaughn Street have single family residences erected thereon with a few vacant lots remaining, three of which are the subject of this litigation.

The present fair market value of the majority of the residences in the immediate neighborhood range from $18,000 to $75,000. Several are residences of substantially greater value. The area includes some of the most expensive homes in the Harrisburg metropolitan area. Erection of the proposed tourist court will depreciate residential properties in the immediate neighborhood fifteen to twenty *per cent.* of their present fair market values. The land upon which appellants propose to erect a tourist court is in a strictly residential neighborhood. A tourist court cannot be operated without accompanying noises of banging car doors and trunks, and a certain amount of loud talking, all of which constitute an annoyance in the immediate neighborhood.

Based on the foregoing findings of fact, the court below concluded as a matter of law that a tourist court in a strictly residential area is a nuisance *per se,* and enjoined appellants from erecting the proposed tourist court.

Whether the locality here involved is commercial, residential or strictly or predominately residential, and whether the proposed use within it would unreasonably infringe property rights of inhabitants thereof is a matter ordinarily resting within the sound discretion of the court below: *Calvary Presbyterian Church v. Jones,* 322 Pa. 77, 80, 185 A. 267, 268. Findings of a chancellor, affirmed by the court *en banc,* will be disturbed on appeal only when not supported by evidence or where arbitrarily and capriciously made: *Essick v. Shillam,* 347 Pa. 373, 32 A. 2d 416. Conclusions of law deduced from findings of fact are always the subject of judicial review: *Potter v. Brown,* 328 Pa. 554, 195 A.

901; *Lineaweaver's Estate,* 284 Pa. 384, 131 A. 378. However, review of this record does not, in my opinion, reveal any abuse of discretion or any error of law.

True, as found by the chancellor Front Street is a much traveled highway with substantial use by heavy trucks. No new residences have been erected on it in the area of the several blocks in question during the last twelve or fifteen years. A tourist home is located at 3109 North Front Street, and a naval training center, formerly the Harrisburg Academy, is located north of Division Street. Front Street *south* of Division is in a transitional stage, changing from primarily residential to business or commercial. These facts do not, however, compel the conclusion that the immediate locality with which this case is concerned is in a transitional stage. More must be shown. *There must be evidence of inroads within the area immediately to be affected by the proposed use of the land.* There must be shown a breaking down of existing boundaries and absence of an existing line of demarcation which would divide commercial from residential and residential from predominately or strictly residential localities.

With regard to restrictions upon use of the land beginning at Division Street and proceeding north within the City of Harrisburg, the following is shown: Academy Manor, 89 lots, restricted for residential purposes; Riverside, 337 lots, restricted for residential purposes; Vaughn Terrace, 39 lots, not restricted but occupied exclusively by expensive residences with the exception of the northernmost three lots of this tract which are the subject of this litigation. The following restrictions exist on land in Susquehanna Township proceeding north from the City line: Bergner Farm, 222 lots, restricted for residential purposes and zoned for residential purposes only; Montrose Park, 134 lots, restricted for residential purposes and zoned for residential purposes only. The foregoing lots occupy a dis-

tance of several miles along Front Street and constitute the largest exclusively residential area in the City of Harrisburg and adjoining Susquehanna Township.[2]

There has been no invasion of this exclusively residential district by commercial interests, nor has there been any change with regard to its exclusively residential character. It cannot be said, as a matter of law, that increased vehicular traffic over Front Street has effected any change in the character of the neighborhood. The advent of the automobile and change of use of highways together with change of streets from dirt and cobblestone to concrete and other smooth and durable surfaces, cannot now be asserted as a reason to deprive a district of its true residential character and owners and residents of their concomitant rights. Particularly is this true, where, as here, the evidence clearly establishes the locality to be strictly residential and not to have been invaded by business and commercial interests. Cf. *Burke v. Hollinger,* 296 Pa. 510, 521, 146 A. 115.

Existence of the Naval Training Center, a substitute for the old Harrisburg Academy, as regards use and characteristics, had not effected a disturbance of the peace and quiet of the neighborhood, or a decrease in value of property. The development of the area as strictly residential about the Harrisburg Academy is strong and compelling evidence of this. Evidence that commercial interests have invaded the prior strictly residential area *south of Division Street* and effected a change of classification, cannot sustain a finding that the neighborhood to the north thereof has similarly changed. There is no occasion now to determine the limits of the strictly residential area. It is

---

[2] Concern as to its preservation as such is evidenced by the zoning ordinance which was passed, referred to in footnote 1, supra.

sufficient that there is no evidence of a change in the portion thereof material to the issue presented.

What was said by this Court, speaking through Mr. Justice PATTERSON, in *Bortz v. Troth,* supra, is peculiarly applicable here: "Boundaries there must be, which divide commercial from residential and residential from exclusively residential. Exclusively residential districts are not to be denied the benefit of principles of law and equity appertaining thereto because bordered by or proximate to districts termed commercial." Clearly, the locality has been and presently remains strictly residential in character. It is not in a period or state of transition. The majority opinion permits the erection of the tourist court in the very heart of this highly residential neighborhood.

Appellants contend and a majority of this Court hold that the conclusion that "a tourist court in a strictly residential area is a nuisance *per se*" is an error of law. It is said that the findings of fact that the tourist court will be a one-story inn of modern and attractive design, that it will be operated as sleeping quarters only for transient guests, that neither gasoline, oil, soft drinks, food or accessories will be sold on or about the premises, that no trucks or truckers will be accommodated, that after 11:30 p.m. only safety lighting will be maintained, such illumination to be designed to confine itself to the premises, and that there will be parking space for a maximum of 25 cars, compel a contrary conclusion. It is argued that the purpose of the tourist court is to provide sleep for transient guests and of necessity requires for its successful operation surroundings conducive to sleep and a minimization of possible annoyance and discomfort to guests, with the corresponding minimization of possible annoyance and discomfort to residents in homes adjacent thereto. It is further urged that noise emanating from the interspersed arrival and departure of

guests cannot, in view of the already prevalent traffic noise, warrant a finding of a nuisance as a matter of law.

I am firmly of opinion that operation of a tourist court in a strictly residential area does constitute a nuisance *per se*. The purpose is to rent rooms by night to transients. There will be parking of cars in the evening and at night during the time residents of the area are entitled to the greatest degree of quiet and privacy. The principal business of a tourist court is not transacted during what are commonly known as "business hours" of the day. Guests will leave on errands and return. There will be the intermittent annoying glare of headlights with each arrival and departure. Bright lights necessary to attract transients will remain lighted until 11:30 p.m., and safety lighting will continue through the night. If vacancies exist, motorists will be received without regard to the particular hour. Departures will undoubtedly occur in the early hours of the morning. There will be the starting of motors and the banging of doors and trunks. There will be a certain amount of loud talking and calling among patrons of the tourist court. The majority opinion holds that these results "are neither inevitable nor likely." These things, in my opinion, *are* inevitable and their disastrous effect upon the peace and quiet of an exclusively residential neighborhood should be readily recognized and fully evaluated. Common experience of mankind, of which this Court takes judicial notice, proves this to be the result. See *Ladner v. Siegel*. 293 Pa. 306, 311, 142 A. 272. Particularly is this true where, as here, the tourist court is proposed to be erected, as stated, in the very heart of such neighborhood. Imposition of additional annoyances attendant upon operation of a tourist court as regards arrival and departure of guests certainly cannot be justified by assertion of a possible annoyance resulting from traffic

upon Front Street. Cf. *Bortz v. Troth,* supra. Nor can same be justified by suggesting a "tremendous convenience to automobile travelers."

Residents of the immediate neighborhood will not only be deprived of the peace and quiet to which they are entitled, but erection of the tourist court would have a decided adverse effect upon the value of their property. The evidence amply sustains the finding of the chancellor that upon erection of the tourist court the present market value of residences in the immediate neighborhood would depreciate in value from fifteen to twenty *per cent.* The majority has failed to give any effect to this finding.

Having due regard to the nature, type and proximity of dwellings, the effect upon property valuation, and other circumstances tending to establish a type of neighborhood, it clearly appears that the court below properly concluded that the neighborhood and locality in which appellants propose to erect a tourist court and conduct the business of operating the same is strictly residential and not in a transitional stage, and that a tourist court in such neighborhood would constitute a nuisance *per se.* Reasonable grounds exist to believe that the proposed use will constitute a nuisance and it is reasonably certain that irreparable harm will be visited upon complainants by the threatened acts. See *Todd v. Sablosky,* 339 Pa. 504, 512, 15 A. 2d 677; *Edmunds v. Duff,* 280 Pa. 355, 124 A. 489.

I would affirm the decree of the court below and declare the law of this Commonwealth to be that a tourist court in a strictly residential neighborhood is a nuisance *per se.*

Mr. Justice LADNER joins in this dissenting opinion.